**PUBLISHED**

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

February 28, 1997

_____

**No. 94-1011**

_____

**O R D E R**

In Re:  General Motors Corporation

James E. Butler, Jr. represented numerous plaintiffs who brought products liability actions against General Motors in state and federal court.  One of these actions was Cameron v. General Motors Corp., from which U.S. District Judge G. Ross Anderson, District of South Carolina, recused himself.[1]  As part of his recusal order, Judge Anderson made certain factual findings, including that a review of the documents in the case revealed "a substantial likelihood that perhaps perjury and the systematic destruction of documents involving gross misconduct by General Motors' regional counsel occurred."[2]  Holding that the new factual findings were improper, in March 1994 we issued an order stating, in pertinent part:  "[S]ection III of the recusal order, as well as any other statements in the order relating to the possible destruction of documents [or] perjury by [General

_____

[1] Cameron v. General Motors Corp., 1994 WL 159408 (D.S.C. Feb. 28, 1994).

[2] Id. at *23.

Motors or its counsel] . . . are hereby stricken from the [recusal] order and should not be hereafter cited as authority."[3]

Ignoring our ruling, Butler cited the stricken recusal order passages during separate proceedings before a Georgia state court and the U.S. District Court for the District of Kansas. On August 8, 1995, we found Butler in civil contempt of our earlier order and awarded General Motors reasonable costs for its efforts to correct Butler's misconduct.[4] We referred the matter to U.S. District Judge Robert G. Doumar of the Eastern District of Virginia for a determination of the proper amount to be assessed against Butler.[5] Judge Doumar subsequently filed a report and recommendation.

We have carefully reviewed the report, Butler's objections and General Motors' response. In order to calculate the award, Judge Doumar waded through the murky waters of legal billing. We find no error in his meticulous findings of fact or his conclusions of law.

As Judge Doumar notes, in a pun that bears repeating, if the Butler did it, the Butler pays for it. Butler may have had to pay less, however, if he had not followed an ill-advised policy of contesting each and every aspect of this contempt proceeding. Judge Doumar recommends awarding General Motors $24,894.50 for its legal costs in correcting the effects of Butler's misconduct,

---

[3] Order of March 23, 1994 at 2-3 (quoted in In re General Motors Corp., 61 F.3d 256, 275) (4th cir. 1995)).

[4] General Motors, 61 F.3d at 259-60.

[5] Order of September 11, 1995.

and $165,646.81 for its legal costs stemming from this contempt proceeding.  Butler, of course, had the right to put on a vigorous defense.  But in the aftermath of our decision to hold Butler in contempt, a conciliatory stance on some issues would have softened the blow of this order by reducing General Motors' overall legal expenses.

For the foregoing reasons, we adopt Judge Doumar's report and recommendation in its entirety and award General Motors a total of $190,541.31.

With the concurrence of Judge Hamilton and Judge Williams,

/s/
_____
U.S. Circuit Judge Donald Russell

3

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

—————————

No. 94-1011

—————————

IN RE:  GENERAL MOTORS CORPORATION,

United States District Court for the
District of South Carolina, Columbia Division
Civil Action No. 3-95-3236-16

FINAL REPORT AND RECOMMENDATION UNDER SEAL

This matter has been referred to the Court by the Fourth Circuit for a determination as to the appropriate civil contempt amount that should be assessed against a lawyer, Mr. James E. Butler ("Butler" or "Respondent").  The final response having been filed on May 20, 1996, this case is ripe for decision.  The Court DENIES Respondent's motion for an evidentiary hearing. This Court recommends that Petitioner receive $18,897.50 for the harm caused by Respondent's contempt in Moseley v. General Motors, $5997.00 for the harm caused by Respondent's contempt in Cockrum v. General Motors, and $165,646.81 in attorneys' fees for this contempt proceeding.  Thus pursuant to the Fourth Circuit's directive, this Court recommends that

Petitioner be awarded a total of $190,541.31 against the Respondent, including attorneys' fees through January 30, 1996.

## PROLOGUE

*Revenge is a kind of wild justice, which the more man's nature runs to, the more ought law to weed it out.*[6]

The issues in this case have been so much like every case the Court has ever seen before, and yet at the same time, its parts have been quite exaggerated, so that the entirety has been like no other case over which the Court has presided. When all is said and done, however, the matter is simply one of attorneys' fees: what actions did Butler's contempt reasonably force General Motors' counsel to undertake, and what were the reasonable fees for General Motors ("GM") to prosecute this action to right the scales.

Likely typical of many federal district judges, the Court estimates that it passes on between sixty and one hundred fee applications per year for attorneys representing indigent criminal defendants and parties in civil rights cases.[7] Thus the Court would further estimate that the average federal judge in this district spends between five and ten percent of his or her time considering and passing on applications for fee awards. The Court has become quite

---

[6]Francis Bacon, "Of Revenge," Essays or Counsels, Civill and Morall (1625).

[7]The Eastern District of Virginia, to which the undersigned is permanently assigned, is one of the few districts which has no public defenders and relies upon panel attorney for indigent criminal representation, with the attendant fee requests.

5

knowledgeable of the standards set forth in this Circuit in <u>Barber v. Kimbrell's, Inc.</u>, 577 F.2d 216 (4th Cir.), <u>cert.</u> <u>denied</u>, 439 U.S. 934, 99 S. Ct. 329 (1978).

At this point a little background of the present case would be instructive. Butler represented numerous plaintiffs across the country in state and federal courts who sued GM after accidents occurred in their C/K pickup trucks which resulted in gasoline tank explosions. The discovery of certain information by plaintiffs' attorneys caused them to believe that young GM attorneys, who have been derisively called by some individuals "fire babies," had destroyed or hidden documents relating to GM's liability for those fires, or committed perjury relating to the alleged destruction of documents. Judge Anderson was referring to these alleged incidents of misconduct in <u>Cameron</u>. The Fourth Circuit thereafter struck that part of Judge Anderson's order, yet Butler cited the stricken language on at least two occasions.

Given that background, the present matter between Butler, one of the country's most successful trial attorneys, and General Motors, one of the world's largest industrial corporation, has posed no great problems for the Court at its most basic level, fees. Now that the Court has finally come to the point where it may reach these most elemental questions, the Court can honestly say that it has judged the fairness and equity, as well as the legal requirements, for each and every task claimed by General Motors, and has reached what it believes is the most appropriate outcome. It has read what it believed to be the pertinent portions of the transcripts in various hearings as well as reviewed the documents as filed in all of the relevant cases. Looking back on the process to get to this point, however, the Court also sees, with the perfect clarity that hindsight affords, the exaggerations that have come to make this case so time-consuming. This too may be whittled down to what the Court believes has created so much difficulty: hubris. The

6

resultant conflict between GM and its customers arising out of the truck fires put at issue literally hundreds of millions of dollars in tort awards. Thus lawyers' fees in this vast expanse of litigation would rise into the millions on both sides, and the parties in this action were the major contestants. With enormous awards (and contingent fees), it is by no means an exaggeration that these suits became personal to the lawyers involved. Each opponent felt it necessary to field an army of attorneys. Thus the stage was set for the battles with Butler and his team of attorneys on one side and GM's team on the other.

It appears to the Court that at some point during all of this litigation, the attorneys chose to attack each other personally. Though the Court does not doubt that the issue may have been relevant to the plaintiffs' cases, it certainly made for better publicity and no doubt was used to persuade GM to approach the bargaining table, regardless of whether GM believed the allegations had any merit. Like the escalation during any war, when Butler and his team began attacking the professionalism and ethics of General Motors' attorneys on a public and national scale, General Motors felt that it had to defend itself and its lawyers by responding with a similar attack on the plaintiff's main counsel, Butler. As counsel for GM stated at oral argument,

> the gravamen of the complaint [was] possible perjury, possible obstruction of justice. Your honor, that is an allegation of possible crimes. Quite apart from what impact that may have in product liability litigation, it goes to integrity, the integrity of the company, its 800 thousand men and women, and then the integrity of its outside lawyers. Some very fine lawyers from across the country. And let us not kid ourselves.... This was the battleground, the national battleground that Mr. Butler chose .... The stakes, your Honor, were [extra]ordinarily high because that was profoundly wrong. Profoundly wrong.

7

Transcript of January 30, 1996, hearing, at 53-54. Thus when Butler attacked General Motors' counsel, GM responded and attacked Butler. In any war between attorneys, and this case has been no exception, justice has a tendency to become obscured while personalities predominate.

All of which brings us to the present action, in which Butler responded to GM's petition, fighting every step of the way. In this Court he has seen fit to attack each and every item and each and every ruling, including those of the Fourth Circuit which this Court must and will follow. This tactic has often been referred to as the "Stalingrad Defense," named after the Soviet defenders of that city during the German eastern offense in World War II--give up not a single inch, and eventually the opposition may be beaten down into submission by not only the cold, unforgiving winter, but also by the sheer tenacity and persistence of the defenders. What was obvious was that the opponents here came in with such large numbers of attorneys that the Court was concerned, by virtue of the number of participants, whether the battle was to be physical rather than verbal. Although nothing of that nature appeared at oral argument, the distrust was evident.

## Chapter I: The History

*Truth often suffers more by the heat of its defenders than from the arguments of its opposers.*[8]

---

[8]William Penn, Some Fruits of Solitude (1693).

8

The Court has visited the history of these proceedings numerous times previously. Yet in hopes of finding a clear and complete end in this Court, we struggle onward, "Once more unto the breach, my friends, once more."[9]

On September 14, 1994, GM commenced these proceedings before the Fourth Circuit by moving the Fourth Circuit for an order requiring Butler's counsel to show cause why the Fourth Circuit should not hold Butler in civil contempt for violating the Fourth Circuit's order of March 23, 1994 ("March 23rd Order").[10] A hearing was held before the Fourth Circuit on October 20, 1994, and the Fourth Circuit issued an order and opinion holding Butler in civil contempt on August 8, 1995 ("Contempt Order"). In re General Motors Corp., 61 F.3d 256 (4th Cir. 1995). That order provides the basis for the proceedings in this Court.

In February of 1994, the Honorable G. Ross Anderson of the District of South Carolina entered an order recusing himself from further participation in Cameron v. General Motors Corp. In his recusal order, inter alia, Judge Anderson made certain factual findings, including the following statement:

> A review of the thousands of documents in this case including in camera reviews of documents for which an attorney-client privilege was asserted reveals a substantial likelihood that perhaps perjury and the systematic destruction of documents involving gross misconduct by General Motors' regional counsel occurred.

---

[9]William Shakespeare, King Henry the Fifth, act III, sc. i (1600).

[10]For a full and complete understanding of all of the proceedings to date and all arguments made by both parties, one should review this order in conjunction with the Court's most recent order, signed April 26, 1996.

61 F.3d at 257.[11] Because the Fourth Circuit believed that the new factual findings and legal conclusions in Judge Anderson's recusal order were improper, the Fourth Circuit struck certain portions of the recusal order. The Fourth Circuit's March 23rd Order stated in pertinent part:

> As a result, section III of the recusal order, as well as any other statements in the order relating to the possible destruction of documents [or] perjury by [GM or its counsel] ... are hereby stricken from the order and should not be hereafter cited as authority.

61 F.3d at 257 (quoting March 23rd Order, at 2-3) (emphasis added). Butler continued his representation of other clients pursuing products liability actions against GM in other courts, including two which are relevant here: a Georgia state court proceeding in Moseley v. General Motors Corp. (No. 90-V-6726, Sup. Ct., Fulton County, Ga.), and a proceeding in the United States District Court for the District of Kansas in Cockrum v. General Motors Corp. (No. 93-1180-MLB, D. Kan.).

In a brief filed in Cockrum on April 1, 1994, Butler cited the stricken language from Judge Anderson's recusal order and failed to state that such language had been stricken by the Fourth Circuit in its March 23rd Order, but stated that the Fourth Circuit did not dispute Judge Anderson's findings in that order. 61 F.3d at 257-58 n.1. Prior to the Fourth Circuit's March 23rd Order, Butler had moved for depositions of GM counsel, citing Judge Anderson's recusal order. GM then moved for a protective order. Immediately after the Fourth Circuit struck Judge Anderson's findings, GM filed a supplemental brief in support of its motion for a protective order. In this supplemental brief, GM argued that the attorney depositions should be disallowed, and called attention to and attached the Fourth Circuit's order of March 23rd. See Supplemental

---

[11]The Honorable Charles H. Haden, II, took over the Cameron litigation subsequent to Judge Anderson's recusal.

Memorandum, filed March 23, 1994, attached as Exhibit D to Affidavit of Peter J. Daughtery. The offending brief was filed on April 1, 1994, as a response to GM's supplemental brief, and discussed both the Fourth Circuit's order and Judge Anderson's factual findings in the context of responding to GM's supplemental brief, arguing that those underlying factual findings by Judge Anderson had not necessarily been undercut. GM filed a reply brief, part of which took issue with Butler's interpretation of the March 23rd Order. This was one incident of contempt of the Fourth Circuit's March 23rd Order with which the Fourth Circuit took issue in the Contempt Order.

In Moseley, the Georgia Court of Appeals reversed a significantly-sized jury award against GM resulting from a jury trial presided over by the Honorable Albert L. Thompson in state court in Georgia. Butler was plaintiff's counsel in that case as well. One basis for the reversal was that a certain deposition, arguably related to plaintiff's claim of document destruction, was used at trial by plaintiff, but the deposed party was unavailable for cross-examination by GM because of his death. General Motors Corp. v. Moseley, 447 S.E.2d 302, 307-08 (Ga. App. 1994). Thus the Moseley matter was before Judge Thompson to proceed to a new trial, and the issue had come up in the autumn of 1994 as to whether there should be additional discovery before the new trial. This is where the issue of attorney depositions was raised by Butler. In a letter dated August 30, 1994, to Judge Thompson, the presiding judge in the Moseley case on remand as well, Butler again quoted stricken language from Judge Anderson's recusal order. The Fourth Circuit described this behavior as follows:

> In particular, [Butler] quoted the same language that this court had used in its
> order to exemplify the inappropriate findings included in Judge Anderson's order.

11

> In quoting the language, Butler also highlighted certain words that were not emphasized in Judge Anderson's original order....
>
> In the paragraph following the quoted language, Butler ... stated that Judge Haden in the Cameron case had "reinstated several of Judge Anderson's prior orders." ... Nowhere in Butler's letter did he state that this court had stricken the portion of Judge Anderson's order he quoted and had ordered that the portion should not be cited as authority.

61 F.3d at 257-58 (quoting Respondent's letter of August 30, 1994). Counsel for GM by letter subsequently informed Judge Thompson of the specifics of the March 23rd Order by the Fourth Circuit, and also advised Judge Thompson that Judge Haden had not reinstated the language stricken from Judge Anderson's recusal order. Eventually, in December of 1994, Butler did explicitly and personally formally inform Judge Thompson by letter of the Fourth Circuit order. Id. This was the other, and more audacious, incident of misconduct with which the Fourth Circuit took umbrage.

The Fourth Circuit reviewed the above facts and then held in its Contempt Order of August 8, 1995, that "GM has satisfied its burden of demonstrating by clear and convincing evidence that Butler violated the specific and unequivocal commands of our order of March 23, 1994." Id. at 258. The Contempt Order then discussed the appropriate remedy, and found that a compensatory sanction was appropriate, which generally "may not exceed the actual loss to the complainant caused by the actions of Respondent, lest the contempt fine become punitive in nature, which is not appropriate in a civil contempt proceeding." Id. at 259 (quoting In re Tetracyclene Cases, 927 F.2d 411, 413 (8th Cir. 1991) (quoting N.L.R.B. v. Laborers' Int'l Union of North America, 882 F.2d 949, 955 (5th Cir. 1989))). The Fourth Circuit's Contempt Order concludes the following:

12

It is clear to us that GM has suffered a compensable loss. There is no question that GM was injured as a direct result of Butler's citation to Judge Anderson's recusal order in his August 30, 1994, letter to Judge Thompson and his brief filed in <u>Cockrum</u>. GM has expended considerable resources to correct or thwart the effects of Butler's blatant misconduct in the Georgia state court and the United States District Court for the District of Kansas. Unquestionably, Butler's letter of August 30, 1994, caused GM to incur a considerable expense to defend actions in other jurisdictions that were premised on findings and conclusions this court had stricken and specifically ordered Butler not to cite. As a result of Butler's contumacious behavior, GM is entitled to be compensated for its expenses germinating from Butler's misconduct in the Georgia state court and the United States District Court for the District of Kansas. Furthermore, GM is entitled to reasonable costs and attorney's fees for the contempt proceeding before this court.

61 F.3d at 259 (footnote omitted). In the footnote omitted from the above-quoted passage, the

Fourth Circuit rejected Butler's argument that civil contempt is inappropriate where the

underlying case in the Fourth Circuit, <u>Cameron</u>, had previously been settled. The Fourth Circuit

stated that "[w]ithout question, the harm suffered by GM ... was unredressed at the time the

<u>Cameron</u> case was settled, and, therefore, this contempt proceeding is not moot." <u>Id.</u> at 259 n.3.

Thus it is clear that the Fourth Circuit found significant injury to GM, yet the Fourth Circuit left

open exactly where and in what manner this harm occurred.

The Fourth Circuit ordered GM to file a "summary of its expenses related to correcting

the effects of Butler's misconduct in the Georgia state court and the United States District Court

for the District of Kansas and its costs and attorney's fees for [the contempt] proceeding." <u>Id.</u> at

260. In its final footnote, the Fourth Circuit stated, "[i]f Butler has learned one thing from this

proceeding, we hope it is this: the portions of Judge Anderson's recusal order which we struck in

our order of March 23, 1994, are not to be cited as authority. We hope Butler will heed this

admonition." <u>Id.</u> at 260 n.5.

13

As ordered by the Fourth Circuit, General Motors subsequently filed its "Summary of Expenses" with the Fourth Circuit on August 28, 1995. The three-page summary expressly excluded any costs or other expenses, but only included attorneys' fees relating to the three matters to which the Fourth Circuit had referred: the contempt proceeding, Moseley and Cockrum. The Summary broke down its requested total of $212,739.75 into matter, law firm, number and level of attorney (or paralegal), dates worked and total number of hours worked by each firm on each matter. The Summary further stated that if the Fourth Circuit desired, GM would be willing to submit more detailed information in camera and under seal, as it claimed that such detailed information was protected by the attorney-client privilege and the work product doctrine, as well as the fact that Butler continued to represent other clients in pending lawsuits against GM.

Butler filed his opposition to GM's Summary with the Fourth Circuit on September 7, 1995. Butler argued that GM's Summary had no factual or legal support for the amounts claimed, and that due process required GM to prove the fact, amount and causal nexus of the injury GM suffered. If GM did not prove its actual losses, the sanction would be punitive, Butler argued. Because GM's Summary did not identify specific tasks performed by any of the attorneys, Butler claimed, it did not address the harm actually caused by Butler and therefore could not be the basis for a civil contempt sanction. Butler further argued that due process required more than in camera review as Butler must be allowed to challenge GM's claims. Butler charged that there was prima facie evidence that no harm occurred in Moseley and Cockrum, and that the civil contempt proceeding was an attempt by GM to harass Butler and discourage him from aggressively representing his other clients against GM. Butler further stated that GM's

14

Summary failed to even satisfy the standards in the Fourth Circuit for attorney's fees requests, citing Barber v. Kimbrell's, Inc., 577 F.2d at 226 & n.28.

To support his arguments, Butler cited two examples of claims in GM's Summary which were purportedly facially suspect. Butler argued that, aside from the fact that lawyers in the firm of Kirkland & Ellis spent an extraordinary number of hours on the contempt proceeding alone (472.5 hours), the average hourly rate (approximately $215) exceeded that of the normal charge for both paralegals and associates. Butler's second example was that among the list of dates on which attorneys from the law firm of Nelson, Mullins, Riley & Scarborough, L.L.P., worked on the contempt proceeding were tasks performed in July, 1994, each more than a month prior to Butler's letter to the Moseley court. Thus Butler argued that these days could not have been spent on the civil contempt proceedings.[12] Butler pointed to these alleged irregularities as two examples of "facially suspect" claims and argued that an evidentiary hearing was necessary.

Butler had also submitted to the Fourth Circuit a motion for an evidentiary hearing. This motion raised most of the issues already discussed. It also raised a number of arguments against any finding of harm to GM: for example, the Fourth Circuit could not presume that the Moseley and Cockrum courts were misled by Butler. The motion also quoted a number of supporting affidavits and declarations which purported to call into question any finding that these courts were misled or that damage occurred. Finally, Butler argued in the motion that GM claimed attorneys' fees in Moseley for dates predominantly after GM's counsel submitted a letter to the Georgia court in Moseley which notified that court of Butler's "misstep." If GM counsel's letter

---

[12]It is noted that this Court in this opinion has awarded a total of 3.1 hours for associate research which was utilized in this case where the research occurred prior to the Moseley letter. See, infra, objection 16.

15

was successful, Butler argued, GM could not show what these attorneys were "correcting," because there was nothing left to correct. The motion requested a referral to an appropriate district court for an evidentiary hearing.

GM responded by arguing that the issue of whether harm had occurred was already decided in GM's favor by the Fourth Circuit in its Contempt Order, and therefore was foreclosed by the law of the case. GM also argued that the Fourth Circuit was eminently capable of determining the amount of GM's loss, and therefore a referral of the matter to a district court and an evidentiary hearing would be unnecessary and wasteful. GM further cited authority supporting its claim that GM's detailed legal bills were covered by the attorney-client privilege and/or the work product doctrine. Finally, GM argued that Butler's due process rights were not violated by the proceedings in the Fourth Circuit. Thus GM concluded that the Fourth Circuit was capable of and should determine GM's compensable losses, making remand and an evidentiary hearing inappropriate and unnecessary. GM restated its willingness to provide additional information to the Fourth Circuit via in camera review.

On September 11, 1995, the Fourth Circuit addressed Butler's request for a more complete justification of GM's charges, and for a reasonable opportunity to respond to GM's justifications. Fourth Circuit's September 11th Order ("Referral Order"), at 1. The Fourth Circuit stated the following in its Referral Order:

> After due consideration, we do hereby refer the petition of General Motors for review and determination of the proper amount to be assessed against the respondent under the contempt decision ordered by us herein to United States District Judge Robert G. Doumar ..., with all the power and prerogative incident to such assignment.
> The motion of respondent for extension of time for responding to the petition of the petitioner General Motors for the assessment of proper charges

16

against the respondent Butler is also referred for decision by Judge Doumar.  In the meantime, the time for filing his objections to the charges by the respondent is extended from September 7, 1995, with authority in Judge Doumar to fix the time for filing Butler's response to General Motors' proposed charges herein.

The Fourth Circuit did not directly address Butler's motion for an evidentiary hearing, but instead referred the matter to a district court as requested by Butler.

This Court ordered, on September 28, 1995, each party to submit relevant materials in camera and under seal.  Each party complied with the Court's order.  Butler then moved for an order compelling the production of the settlement agreements between General Motors and the plaintiffs in the Moseley and Cockrum cases.  The motion for an order compelling production of the settlement agreements was denied on numerous grounds, but primarily because the Court could not contemplate a single theory of relevance of those settlement agreements to the present matter which would not have raised serious and immediate concerns over Butler's ethical conduct in counselling his clients to agree to those settlements.  See Opinion dated December 12, 1995.

After receiving the initial wave of briefs in camera from the parties, the Court decided that each party should be able to hear and respond to the arguments raised by the other.  The Court therefore ordered the parties to brief the issues according to a briefing schedule set by the Court and, further, to reply to interrogatories developed by the Court to focus on the heart of the present matter.  GM was ordered to put forth its arguments on privilege and work product, and to restate its claimed expenses so that Butler would have the opportunity to respond.  Butler took advantage of this opportunity to raise the issues of due process, waiver, and the propriety of the contempt sanction.  GM in turn was given the opportunity to reply to Butler's arguments on these issues.

17

As the Court has stated, the interrogatories were drafted and ordered to focus the parties on the issues that the Court believes are key to the determination of the amount of harm caused by Butler by his misconduct in Moseley and Cockrum. GM was ordered to respond to the following interrogatories:

1.    GM claims that Butler's letter to Judge Thompson in Moseley, despite GM's immediate response letter, caused that court to sua sponte order the deposition of certain GM counsel, and has claimed that Butler's letter was the only support in the record for such an order. What was the result of GM's responses to Butler's letter, i.e., was GM counsel ultimately deposed? Further, what filings, motions, etc., were precipitated by Butler's misconduct in the Moseley court?

2.    GM alleges that the brief in Cockrum referred to the stricken language as a "judicial finding" of misconduct by GM attorneys. What filings, motions, etc., were precipitated by Butler's misconduct in the Cockrum court?

Butler was ordered to answer the following interrogatory:

1.    What support in the Moseley record was there for the order deposing GM counsel?

The Court then held oral argument on Respondent's motion for an evidentiary hearing at Norfolk, Virginia on January 30, 1996. There counsel for Butler conceded that the hourly rates charged by General Motors' outside counsel were reasonable. Thus eliminated as an issue in this case are the reasonableness of those hourly rates. The Court also attempted, by referring the parties to a meeting with United States Magistrate Judge Tommy E. Miller, to have the parties work out a settlement of the matter. Though the undersigned took no part in and never was privy to those discussions, it was clear when the parties returned to open court before the undersigned that no settlement was possible. The Court surmises that the issue had become at that point, and remains so today, one of pride for the parties involved.

18

Subsequent to oral argument, the Court ordered GM to submit its actual bills relating to its claimed expenses in camera and under seal, and include a section proposing certain materials which would be transmitted to Respondent so that Respondent could fairly attack the validity of any claims made by GM. With respect to the actual bills, the Court ordered GM to disclose whether GM received any discounts or paid any premiums for the work done by its outside counsel, so that Butler would only be required to pay for costs actually incurred by General Motors. GM submitted certain bills, as well as the detailed expenses of the work performed in the contempt proceeding in this court (which had not previously been submitted), and the proposed submission. The Court ordered GM's proposed submission to be transmitted in full to Respondent under seal and pursuant to a protective order, and ordered all subsequent filings be covered by such protective order.

The Court then afforded Respondent an opportunity to reply to GM's detailed submission, stating that Respondent must "respond in the form of objections to particular tasks or particular dates, and [to submit] any documentary evidence that Respondent reasonably believe[d could] rebut these charges." Order of March 5, 1996, at 2. Butler responded to the Court's directive. He listed numerous general and specific objections, but nowhere attended to the second part of the Court's order, to submit further evidence. See "Respondent James E. Butler's Response to Petitioner's 'Tab E' Submission," dated April 1, 1996, and "Respondent James E. Butler's Response to the Court's Order of April 26, 1996," dated May 8, 1996. In fact, Butler expressly stated that "[a]ll of the documentary evidence on which Respondent relies herein is already on file with the Court." "Respondent James E. Butler's Response to Petitioner's 'Tab E' Submission," dated April 1, 1996, at 2 n.2. *Thus no other evidence need be submitted.* Butler

19

also again raised his motion for an evidentiary hearing, argued that his due process rights would be violated if the Court awarded GM any amount, and did in fact object to a few specific items claimed by GM. GM replied by responding to each of Butler's objections. But evidently the evidentiary hearing requested by Butler was to be without evidence. Clearly whether the tasks were actually performed by GM's counsel is not contested, but merely whether they were sufficiently related to the present matter. All the necessary information has been provided to address this particular issue. There is nothing that would be provided by any evidentiary hearing other than for a few hours of bickering.

Subsequent to Respondent's response, the Court reviewed and compared GM's in camera submissions to the detailed submission that was transmitted to Respondent. Because the Court found that a small number of the detailed descriptions left out information that remotely might have aided Respondent in making objections to those particular tasks, the Court offered GM a choice: withdraw the particular items or resubmit to Respondent the full descriptions as submitted to the Court in camera. The Court had reviewed the tasks and found that certain task descriptions were not fully explanatory in what they entailed and requested further information. In a separate part of that order, the Court found that the detailed fee information at issue was covered by both the attorney-client privilege and the work product doctrine. The Court further found, however, that GM had waived these protections insofar as the Moseley and Cockrum matters were concerned by bringing this action in the Fourth Circuit. The Court resolved the issue by finding that the waiver was limited to only that information necessary for Respondent to make adequate objections to particular tasks, did not apply to the names of particular attorneys performing work or the rates charged for each, and did not affect the protective order previously

20

imposed to cover all of the relevant material. Where objections were made, the Court read pertinent portions of the actual transcripts and documents.

GM answered the Court's most recent order by withdrawing its claims to amounts represented by the tasks which the Court had identified as requiring further explanation. Butler subsequently responded with general objections covering the entire proceeding, as well as specific objections to each item claimed by GM. GM has now replied to these general and specific objections. Each party's arguments on what occurred in Moseley and Cockrum can now be briefly summarized.

In Cockrum, Butler argues that he withdrew the motion for attorney depositions before the Court there acted upon the motion. Thus he contends that the judge in Cockrum never had any opportunity to be, and could not have been, influenced by the brief. Furthermore, Butler has argued that only three of the thirty-three pages of GM's reply brief addressed Butler's contempt, thus GM's request for over $50,000.00 in fees is patently unreasonable. GM has responded by arguing that the actions of the tribunal in Cockrum is not the issue. Rather, the issue is what actions were GM counsel forced to undertake in response to Butler's brief. GM claims that the brief in reply was necessary and reasonable, stating the national impact of an unfavorable ruling, given the attacks on the integrity of GM and its counsel.

As for Moseley it is clear that Butler's letter on August 30, 1994, to Judge Thompson of the Georgia state court caused at least one initial response by GM, which included the Frank Jones letter of September 2. GM further argued, however, that despite the response letter, Butler's initial letter caused the Georgia tribunal to order, on October 4, 1994, the depositions of various GM counsel. GM claimed that there was no support in the record for such an order, and

21

more importantly, there had never even been a motion by Butler, plaintiff's counsel, for such an order. Thus GM argued that the only support for this arguably "sua sponte" order was Butler's letter citing the language of Judge Anderson which was subsequently stricken by the Fourth Circuit. In response to this allegedly drastic and out-of-the-ordinary order, GM argued that it was forced to spend tens of thousands of dollars to prevent these depositions from occurring by moving to vacate the October 4th order and moving for numerous protective orders, as well as drafting a writ of mandamus, which was never filed. GM claimed that the precedential value of enforcement of such an order would have had national impact upon GM, thus a quick and thorough response was required.

In rebuttal, Butler presented the affidavit of Judge Thompson's law clerk at the time, Monique Walker. She stated that she worked on the Moseley case and that she personally received both Butler's letter of August 30th and GM's letter of September 2nd while Judge Thompson was on vacation. When the judge returned on September 6th, she stated that he received them both at the same time from her. She also stated that the judge received a copy of the Fulton County Daily Report, and in her experience he read it daily. The September 1, 1994 Daily Report's main headline was "Butler Wins Right to Depose GM Lawyers" which discussed Judge Haden's order, as well as the Fourth Circuit having stricken the findings of Judge Anderson. Butler argued that this information showed that Judge Thompson had no opportunity to be misled by Butler's letter.

Butler also produced the affidavit of Lee Tarte Wallace, an attorney in Butler's firm, who stated that he was at a hearing on September 8th before Judge Thompson in the Moseley matter prior to Judge Thompson's order to depose counsel, and stated that no one mentioned Butler's

22

reference to the stricken findings. Butler argued that this showed that GM's counsel must have believed that Butler's misconduct had been adequately cured by its earlier letter. Attached to Wallace's affidavit were copies of numerous newspaper articles reporting on Judge Anderson's findings, as well as the Fourth Circuit's striking of those findings.

GM replied that the issue is "whether it was reasonable for GM to conclude that Butler's letter inflamed Judge Thompson against GM, notwithstanding GM's response to Butler's letter." Thus GM contended that its subsequent filings were intended to set the record straight. GM also stated that it did not claim all of its fees in responding to Judge Thompson's order, but limited its claim to the narrower issue of Butler's misconduct.

The Court is finally satisfied that all of the necessary evidence has been presented, through the transcripts and documents file herein by all parties, and determines that any more argument would be redundant and wasteful. Respondent's motion for an evidentiary hearing is therefore ripe for decision.


## Chapter II: Must We Have an Evidentiary Hearing?

> *The voice of the intellect is a soft one, but it does not rest until it has gained a hearing.*[13]


Butler has ample information to attack the claims of harm and effect submitted by Respondent, yet Butler continues to argue that due process requires a formal evidentiary hearing and other procedural safeguards. He cites International Union, UMWA v. Bagwell, 114 S. Ct.

---

[13]Sigmund Freud, Future of an Illusion 93 (W.D. Robson-Scott trans., 1949) (1928).

2552 (1994) for this proposition. In Bagwell, the Supreme Court stated that civil contempt proceedings leave the offended judge solely responsible for identifying, prosecuting, adjudicating, and sanctioning the contumacious conduct, and therefore should be closely scrutinized. Id. at 2561. The Court explicitly stated, however, that it was not discussing compensatory sanctions, which are the issue here. Id. at 2563. Furthermore, the steps of "identifying," "prosecuting" and "adjudicating" have already been performed by the Fourth Circuit in this case. Respondent is reminded that we are here only having been directed to address GM's expenses related to correcting the effects of his misconduct and to award reasonable attorney's fees in this proceeding.

Butler also points to Hathcock v. Navistar, 53 F.3d 36 (4th Cir. 1995), to support his position that due process requires an evidentiary hearing in this matter. In Hathcock, the Fourth Circuit was addressing contempt under Rule 37 of the Federal Rules of Civil Procedure, however, which deals exclusively with discovery abuses. There the Court recognized that a Rule 37 fine is effectively a criminal contempt sanction, requiring notice and an opportunity to be heard. 53 F.3d at 42. Thus the case is inapposite to the one sub judice. Similarly, Butler cites Roadway Express, Inc. v. Piper, 447 U.S. 752, 100 S. Ct. 2455 (1980), for the statement that "attorney's fees certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record." 447 U.S. at 766-67, 100 S. Ct. 2464. However, this statement also arose in the context of a fee award as a sanction for discovery abuses under Rule 37, therefore by definition (in the Fourth Circuit, at least,) was criminal in nature. 447 U.S. at 763-765, 100 S. Ct. 2464-65. See also McFarland v. Gregory, 425 F.2d 443, 449-50 (2d Cir. 1970) (same).

24

Butler next argues that <u>Allied Materials Corp v. Superior Prods. Co.</u>, 620 F.2d 224 (10th Cir. 1980), shows that the impending sanction against Butler requires more process than that already provided. In <u>Allied Materials</u>, the Tenth Circuit vacated a $12,000 compensatory contempt award that was based on vague and self-serving oral testimony of the complainant. <u>Id.</u> at 227. The only evidence of the damage before the court was the testimony of the injured party, who stated that the costs were "probably" ten or twelve thousand dollars, but definitely at least seven thousand. The district court had relied on this testimony to assess a $12,000 civil compensatory contempt sanction. The Tenth Circuit found the $12,000 award too speculative, and allowed complainant a choice of accepting a reduced award to $7000 or to retry the harm issue on remand. <u>Id.</u> at 226-27. It is therefore not helpful to Respondent that in <u>Allied Materials</u>, the Court would have affirmed an award based almost exclusively on the speculative and admittedly inexact oral testimony of the injured party. <u>Id.</u> at 227. Respondent has failed to show that due process requires any more than that already provided in these protracted proceedings.

GM certainly bears the burden of proving both the fact and the amount of its losses as well as how Butler's conduct proximately caused those losses. <u>Buffington v. Baltimore County</u>, 913 F.2d 113, 135 (4th Cir. 1990), <u>cert. denied</u>, 499 U.S. 906, 111 S. Ct. 1106 (1991) (stating that such a fine compensates the victim for losses they incurred as a result of the violation of the duty). If GM is not held to this burden, the fine imposed would become criminal in nature rather than civil. <u>See</u> <u>In re Kave</u>, 760 F.2d 343, 351-52 (1st Cir. 1985) (holding that where a fine is not determined to be the reasonable costs for losses caused, the fine is punitive in nature). This Court has already held that GM must show such a causal connection, and this order holds GM to this burden.

In Commodity Futures Trading Commission v. Premex, Inc., 655 F.2d 779 (7th Cir. 1981), the Seventh Circuit held that "the refusal to grant a full evidentiary hearing did not constitute a due process denial where the documentary evidence presented ... was more than sufficient to establish contemptuous conduct." Id. at 782 n.2. In that case, the lower court determined its award based on affidavits as to the number of hours expended and the related hourly rate. Id. at 786. Similarly, in Morales-Feliciano v. Parole Bd. of the Comm. of P.R., 887 F.2d 1 (1st Cir. 1989), cert. denied, 494 U.S. 1046, 110 S. Ct. 1511 (1990), the First Circuit held that a matter can adequately be "heard" on the papers submitted to the Court if, given the nature and circumstances of the case, the parties had a fair opportunity to present relevant facts and arguments to the court, and to counter the opponent's submissions. Id. at 6-7. The procedures in this Court fall well within that envisioned in Premex and Morales-Feliciano. No more process is due.

The Court has afforded Respondent numerous opportunities to state exactly why an evidentiary hearing is necessary; not in the abstract, amorphous principles of due process, but rather precisely what witnesses Butler believes he would need to call or what evidence would need to be produced. He has identified not a single individual whose live testimony would aid the Court's decisional process. The Court also afforded Respondent every opportunity to put forth documentation and other written evidence which would rebut GM's claims. He has put forth a few affidavits, which have been discussed above, and identified certain documents in response to the Court's interrogatory. However, Butler stated that all of the information upon which he relies is already before the Court and has failed to identify any other type of evidence necessary. Once the sun burns through the fog of Respondent's persistent arguments supporting

26

his demand for an evidentiary hearing, we are left with only one conclusion: "there is no there there."[14]

When taken to task, however, Butler was forced to concede this issue. At oral argument, the Court specifically laid out the procedure it would follow with respect to the materials being transmitted to Butler, Butler then having the opportunity to present any documentary evidence of his own. The Court addressed whether there remained any need for an evidentiary hearing in the following colloquy with one of Respondent's lawyers, James Crockett:

> THE COURT: All right. Now, Mr. Crockett, let me ask you a couple of questions. Is there any reason we couldn't submit all of this in documents rather than having a hearing itself?

> MR. CROCKETT: That strikes me as eminently reasonable if after I've seen whatever [GM's] submission is. There is always that wild card out there, that I didn't see that one coming.

Tr. at 70. Butler now has everything he needs to contest GM's claims, and Butler has pointed out no "wild cards" which would require an evidentiary hearing. Though Respondent in his latest filings has retreated from the position taken by Mr. Crockett, his counsel's concession was well-taken and accepted. Butler has failed to inform the Court of any documentary or testimonial evidence that the Court might still need to hear or read before making its determination. Moreover, further hearings would unnecessarily cause greater expenses for both parties without eliciting anything which would aid in the determination of the issues. Any more evidence would be merely cumulative, and there has been no showing that it would benefit anyone, except for the entertainment of the participating advocates.

---

[14]Gertrude Stein, Everybody's Autobiography 289 (1937).

One more argument of Respondent's must be put to rest.  Respondent has consistently objected to the allegedly "irregular" manner in which this matter has been handled, claiming that the law "disfavors" in camera proceedings.  However the Court, in making its determinations detailed below, has relied exclusively upon the information that was ultimately provided to Respondent (except for particular names, billing rates, and descriptions of discounts, facts which either have been conceded by Respondent or to which Respondent has put forth no claim of need).  Contrary to Respondent's assertions, the award for GM is not based on "in camera" proceedings, but solely upon the evidence presented openly to the Court and to Respondent and about which each side had more than enough opportunity to argue.  Nothing more is required.  See Premex, 655 F.2d at 782 n.2; Morales-Feliciano, 887 F.2d at 6-7.  Respondent's motion for an further evidentiary hearings is therefore DENIED.

## Chapter III:  General Issues

*And do as adversaries do in law,*
*Strive mightily, but eat and drink as friends.*[15]

---

[15]William Shakespeare, The Taming of the Shrew act I, sc. ii (1594).

The Court will now address the issue that it was asked to determine over ten months ago. The Court first addresses in Chapter IV Respondent's most recent set of general and specific objections. The Court will then divide its awards into two parts, as contemplated by the Fourth Circuit--Chapter V covers the harm caused by Butler's misdeeds in <u>Moseley</u> and <u>Cockrum</u>, and Chapter VI covers the reasonable attorneys' fees for the contempt proceeding.

As the Court has stated previously, the decision the Court must make is different in each of these contexts. In the former, the Court need not directly address the reasonableness of the outside counsel's bills to GM. Rather, the issue in the context of the harm caused by Butler is only whether GM was reasonable in responding through its attorneys to Butler's actions in the way so claimed. Thus the Court need only look at the particular tasks, determine if they were indeed caused by Butler and a foreseeable result of his behavior, and determine if the task was a reasonable response. Given Butler's concession that the hourly rates charged were reasonable and the tasks performed, once the Court determines for which tasks (or portions thereof) GM may recover, the calculation will be relatively simple: what did GM pay for that task (or portion thereof)? In regard to this, the Court must determine if any premiums or discounts were applied to GM's bills. The Court is aware of two discounts, which the Court addresses where appropriate. Thus, other than those discounts, the amounts claimed by GM in its submission are factually accurate representations of what GM actually paid. GM will therefore be reimbursed after-the-fact, i.e., for those recoverable tasks for which Butler is responsible that have already been performed and billed. (Of course, in the interest of crossing every "t" and dotting every "i", the Court will address GM's claims in <u>Moseley</u> and <u>Cockrum</u> in light of the <u>Barber</u> factors as well.)

29

As stated above, the costs of the contempt proceeding must be approached in a different and more traditional manner. This is so because, especially as to those costs incurred by GM after the Fourth Circuit stated that GM would recover its attorneys' fees, there is a greater risk of bill inflation as the "reimbursability" is known before most of the work is performed and billed. Yet, per the Fourth Circuit order, this Court must recommend an award for attorneys' fees. The point here is that the Court will address the harm caused by Butler and the costs of these proceedings as two separate matters requiring the Court to focus on different facts and circumstances.

The Court will first address some preliminary issues before embarking upon the difficult task of determining what actions by GM attorneys were caused by Butler's misconduct. Butler has continued to attack the findings of the Fourth Circuit that GM suffered damage as a result of Butler's misconduct in Moseley and Cockrum. The "law of the case" doctrine is clear that this Court cannot and will not revisit that issue. United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993) (stating that the doctrine "compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court"). Butler did cause harm by his behavior in Moseley and Cockrum. See In re General Motors, 61 F.3d at 259 ("It is clear to us that GM has suffered compensable loss."). Given this Court's interpretation of the Contempt Order, however, the Court is not simply required by the terms of that order to find that harm resulted in the Moseley and Cockrum cases themselves. So stated, the Court is addressing the issue of exactly in what manner GM was harmed with a clean slate.

Respondent has also raised the issue of the level of proof GM must satisfy to prove its damages now that contempt has been found by the Fourth Circuit. There is a split of authority on

30

what formulation the trial court must utilize in determining the fact and amount of particularized damages in compensatory civil contempt, once contempt itself had been found by clear and convincing evidence. The D.C. Circuit noted the split, without deciding the point, in N.O.W. v. Operation Rescue, 37 F.3d 646, 662 (D.C. Cir. 1994) (finding the proof satisfied either standard). The Seventh Circuit, as applied in the Federal Circuit, has required damages be proved only by a preponderance of the evidence, once the fact of contempt is proven by clear and convincing evidence. Graves v. Kemsco Group, Inc. 864 F.2d 754, 755 (Fed. Cir. 1988). See also Select Creations, Inc. v. Paliafito America, Inc., 920 F.Supp. 1251, 1258 (E.D. Wis. 1995). But see Nelson Tool & Machine Co. v. Wonderland Originals, Ltd., 491 F. Supp. 268, 269 (E.D. Pa. 1980) (applying the clear and convincing standard to proof of damages). The Court holds that the "preponderance" standard for proof of damages in this case is more appropriate and will apply that standard here. Since the Fourth Circuit has already found by clear and convincing evidence that harm has occurred, the damages issue should be treated no differently that any other run-of-the-mill civil action or fee application, of which the Court has seen scores.

Finally, GM need not prove that the actions it took in Moseley and Cockrum were solely caused by Butler's contumacious behavior. It is a common principle of tort law that where more than one action or party each was a contributing cause of subsequent damage, liability may be imposed on the wrongdoer if the intervening acts or final result were foreseeable to the wrong-doer. See Westfarm Associates Ltd. Partnership v. Washington Suburban Sanitary Comm'n, 66 F.3d 669, 687-88 (4th Cir. 1995) (interpreting Maryland law). See also Hill v. York County Sheriff's Dep't, 437 S.E.2d 179, 182 (S.C. Ct. App. 1993) (defining actual cause by the "but for" test and proximate cause by "foreseeability"). Thus where it is not totally clear what one piece of

31

information may have been the proverbial straw causing the Moseley court to permit depositions of GM counsel, for example, as long as this Court finds that Butler's contumacious behavior significantly contributed to the decision, and that such a result was foreseeable when Butler acted improperly, Butler may fairly be held accountable for any damage proximately caused by the Georgia tribunal's order. See In re General Motors, 61 F.3d at 259; Apex Foundation Sales, Inc. v. Kleinfeld, 27 F.3d 931, 936 (3d Cir. 1994) (utilizing under similar circumstances the phrase "sufficiently specific nexus" in reviewing the district court's findings of compensable harm caused by civil contempt).[16] Because this is one issue that has not been squarely addressed by either party, although each had innumerable opportunities to do so, the Court will place each task related to Moseley and Cockrum into one of three categories: solely proximately caused by, contributorily caused by, or not caused by, Respondent's contempt. In some cases, this Court has reduced the hours on certain tasks claimed commensurate with what it finds would be an objectively reasonable time to necessarily expend in seeking solutions to Respondent's contumacious conduct. The amount of loss in this matter will be calculated by combining the first two categories subject to reductions for what the Court finds not to have been adequately

---

[16]The Court also notes that a civil compensatory sanction need not always be dependent upon proof of actual loss. Manhattan Indus. Inc. v. Sweater Bee by Banff Ltd., 885 F.2d 1, 5 (2d Cir. 1989), cert. denied, 494 U.S. 1029, 110 S. Ct. 1477 (1990). Thus where a "harm" amount is difficult to calculate, a court is wholly justified in requiring the party in contempt to disgorge any profits it may have received that resulted in whole or in part from the contemptuous conduct. Although the Court in this matter does find that the harm
"caused" is reasonably determinable, had it not found so, a finding that Butler's conduct was at least in part the cause of the settlement of the Moseley case, for example, might have warranted disgorgement of all or part of Butler's fees resulting from that settlement (which in this case might have amounted to millions). See Colonial Williamsburg Foundation v. Kittinger Co., 797 F.Supp. 1397, 1407 (E.D. Va. 1992), aff'd, 38 F.3d 134, 138 (4th Cir. 1994) (affirming district court's order disgorging defendant's profits resulting from contempt and affirming award of $361,067.01 in additional attorney's fees and costs). The Court here need not find that Butler's contempt in part caused the ultimate settlement of the Moseley matter. The Court merely notes that such a result would not be outside of the Court's discretion, nor without logical or precedential support.

shown to be related. Then the Court will calculate the reasonable attorneys' fees for these

proceedings through January 30, 1996 and recommend awarding these to GM as well.

## Chapter IV: Obstinacy and the Stalingrad Defense

*Because half a dozen grasshoppers under a fern make the field ring with their importunate chink, whilst thousands of great cattle, reposed beneath the shadow of the British oak, chew the cud and are silent, pray do not imagine that those who make the noise are the only inhabitants of the field; that, of course, they are many in number; or that, after all, they are other than the little shriveled, meager, hopping, though loud and troublesome **insects** of the hour.*[17]

The Court will now outline Respondent's general objections to GM's claims as outlined in

Respondent's most recent filing. Respondent's first general objection is that it would be

"inappropriate for this Court to grant any award to GM without first granting Respondent access

to and an opportunity to challenge the actual evidence on which that award would be based." As

a result of the Court's most recent ruling, however, it is abundantly clear that the Court's award to

_____

[17]Edmund Burke, Reflections on the Revolution in France (1790) (emphasis in original).

33

GM is based <u>solely</u> on materials to which Respondent has had total access, and to which Respondent has been given ample opportunity to respond. Furthermore, Respondent has completely failed to put forth any arguments or point to any evidence which would require delaying this final decision so that other evidence may be put forward. This objection therefore has no basis and is overruled.

Respondent's second objection is that GM has failed to prove a "causal nexus" between Respondent's conduct and GM's claimed harms. The Court will address this objection with respect to each particular task.[18] Respondent further objects to his opposition to the Court's reading of the Fourth Circuit order finding Butler in contempt. Respondent's argument notwithstanding, the Court has not read that order more broadly than necessary; it has given each line in the order its natural meaning and at the same time ascribed to the Fourth Circuit an intent not to do the unreasonable. The Fourth Circuit could not have intended to tie this Court's hands by finding certain specific reactions by GM were "caused" by Butler's misconduct. The Fourth Circuit recognized that lengthy and detailed analysis of fairly complicated facts were required before such determinations respecting causation were made, thus the Fourth Circuit referred the matter to this Court. Furthermore, the Court indeed may have been offering Respondent a "Hobson's choice" in suggesting that an evidentiary hearing at this point might be cause to allow GM to raise claims for additional harms. However this choice was certainly of Respondent's

---

[18]The Court will only address those objections which it determines has any arguable merit with respect to any particular task. Furthermore, many of the specific objections are redundant and have been addressed globally, prior to the discussion of any particular task. Thus the Court need not respond to every objection raised by respondent when addressing each particular task. Though the Court has made every effort to be thorough, explicitly addressing upwards of ten objections for each of the nearly 400 tasks would be ludicrous. Rather, only where reasonably made has the Court addressed any one objection.

own making in taking numerous positions that the Court believes were, if not wholly baseless, at least substantially motivated simply by a desire to protract these proceedings indefinitely.

Respondent next argues that any award to GM would be inappropriate because the proceedings were brought to punish Butler and to defray GM's litigation expenses. As GM correctly notes, this objection is specious. The Court has been meticulous in guaranteeing that the amounts awarded here are no greater that the harm that was actually caused. GM's motivation in bringing this action is otherwise irrelevant. Finally, Respondent offers the following sums as reasonable in light of Butler's clear and unequivocal contempt: $500 in Cockrum, $200 in Moseley, and a proportionate sum, about $5000, for these contempt proceedings. Truly, the sheer ridiculousness of this proposal was shocking to the Court; no counsel involved here would themselves even consider undertaking any such legal proceedings for any sum remotely near this.[19] Respondent may have been better off not making this ridiculous recommendation.

Respondent conveniently filed his objections by number and assigned them to the particularized tasks, which he also numbered. Some objections must be addressed in the context of the particular task to which they are applied, and some may be handled generally. The Court has reviewed the documents and transcripts filed here, including those in the Moseley and Cockrum cases, in relation to Butler's objections, so as to make its own determinations of what it finds were necessary and reasonable in the context of responding to the contumacious conduct.

---

[19]It is noted that the attorneys involved in this case would probably charge more than that to determine only whether or not they would represent either party in this proceeding.

**Objection 1**: Respondent objects to any task that has been withdrawn by General Motors on the basis of this Court's most recent order. This is an odd objection indeed, but not surprising in a Stalingrad defense. Respondent further argues that his inability to actually view the information that was identified by the Court as potentially or remotely having potential to give Butler an opportunity to attack the particular task, such as information which might have led one to believe that that task involved work only partly relating directly to Butler's contempt, and which GM withdrew, undermines the legitimacy and validity of *all* of GM's claims. On the contrary, however, these particular tasks were identified by the Court as having any *remote* possibility of assailability. The Court never passed on whether in fact these tasks were or were not recoverable. Furthermore, the information identified by the Court was particular only to the task addressed, and did not affect any other tasks or claims GM made. For example, in many cases, the task description in the in camera submission listed certain legal issues which were researched, but the description provided to Respondent only stated that legal issues, in general, were researched. The Court felt that in such cases, it would have been appropriate for GM to include what issues were researched. See, e.g., items 10, 12, 38, 40, 66, 69, 70, 218, 220, 222. GM's withdrawal of the claim was stated to be no more than a willingness to see the end of this matter, and to protect GM's legal defense strategy, since the underlying litigation is ongoing. Clearly this had no effect on the validity of any other claim by GM. This objection is therefore overruled and rejected.

**Objection 2**: Respondent objects to any task in Moseley after GM's counsel wrote his letter to that court immediately following Butler's contumacious letter. Butler again has

36

misstated the Court's task: the Court will determine whether the task claimed bears any relationship to Butler's misconduct, whether such a response was foreseeable by Butler, and whether such response by GM was reasonable under the totality of the circumstances. As a general matter, the Court has found that Butler's letter caused more than merely a single letter in response. On the more specific level, this causation argument will be determined on a task-by-task basis.

**Objection 3**: Respondent objects to any work performed by GM counsel subsequent to and in response to the Moseley court order of October 4 which ordered depositions of GM counsel. On this issue Respondent is correct in noting that his misconduct was not the sole proximate cause of the Judge Thompson's order. However, the Court is convinced that Respondent's contumacious letter played no small part in the process that led up to Judge Thompson's decision. As stated before, the contempt need not have been the sole proximate cause of the tribunal's action, but rather only a significant contributing cause. See Apex Foundation Sales, 27 F.3d at 936.

Butler has previously claimed that his letter to Judge Thompson is legally irrelevant to the judge's decision because a judge is "presumably competent to screen out and disregard what he thinks he should not have heard, or to discount it for practical and sensible reasons." Multi-Media Convalescent & Nursing Ctr. v. N.L.R.B., 550 F.2d 974, 977 (4th Cir.), cert. denied, 434 U.S. 835, 98 S. Ct. 124 (1977). However, when a federal district judge makes numerous statements as strong and definitive as those which were stricken, regardless of whether the reader knows it has been subsequently stricken by a higher court, such comments cannot easily be put

37

out of one's mind.  This was the clear purpose of the Fourth Circuit unequivocal command that the stricken lines from Judge Anderson's recusal order "not be cited as authority."  March 23rd Order, at 2-3.  Further, the Court notes that one of the dangers of letter requests (such as Butler's contumacious letter) is that the suspicion inevitably arises that matters outside of the case and motion filings may arguably affect the tribunal's actions.  Judge Thompson appeared to state as much.  GM's Reply of May 17, 1996, at 7 (quoting Judge Thompson at the 2/1/95 hearing, where he stated that the request for attorney depositions should have come before the Court "in another fashion").  The Court finds that Butler's letter of August 30 in which he specifically quoted Judge Anderson's findings, which were subsequently stricken by the Fourth Circuit, was a contributing cause of Judge Thompson's order of October 4 to depose GM counsel.  Further, the Court finds that the order was foreseeable to Butler when he drafted and delivered that letter to Judge Thompson.  Therefore any reasonable and foreseeable response to that order is also recoverable.  Butler's objection is therefore overruled.

**Objection 4**:  Respondent argues that the depositions ordered by Judge Thompson on October 4 never occurred, and therefore GM cannot recover for actions in response to that order.  The Court finds, however, that Butler wrote the contumacious letter intending to cause an order such as the one issued on October 4th.  The Court finds credible GM's assertions that GM needed to respond forcefully and quickly to that order, in part because of its immense national implications.  Furthermore the motions for protective orders, motions for vacation, and drafting a writ of mandamus, were certainly foreseeable to, if not directly intended by, Butler.  In this respect, then, Butler's objection is overruled.

38

Respondent also notes here that the particular task description identified does not specify to which part of the October 4th order GM counsel's actions were addressing. The Court is aware that Judge Thompson's order concerned numerous issues with respect to the remand by the Georgia Court of Appeals and the new trial, some of which had no relation to Butler's contempt. The Court will therefore address this particular objection in reference to each task where appropriately raised.

**Objection 5**: Respondent argues that work in relation to preparation of a writ of mandamus to prevent attorney depositions was not related to Butler's misconduct. Again, the Court finds that GM has satisfied its burden in showing that these actions, despite the fact that the motion for the writ was never filed, were foreseeable to Butler and were a reasonable response when other attempts had been yet to be acted upon by Judge Thompson. Respondent's objection is overruled and rejected.

**Objection 6**: Respondent argues that the work performed in these tasks were not the result of Butler's contempt in Cockrum. First, as GM correctly notes, Butler only raises this objection with respect to work performed by attorneys for Kirkland & Ellis on this matter and not for work performed by Shaw, Pittman on the same brief. The Court warned Respondent that arguments not raised in his most recent filing may be waived. However, because this objection has been maintained throughout these proceedings and is so vital to Respondent's defense with respect to Cockrum, the Court will not penalize Respondent for this apparent oversight. (Regardless, a similar if not identical objection has been raised in Respondent's objection 7.)

The Court first finds that the reply brief itself was not caused by the misconduct in Cockrum cited by the Fourth Circuit. However, the Court finds that, at the very least a certain portion of that brief responded directly to Butler's misconduct in Cockrum. As for the remaining portions, the Court finds that most of the rest of the brief was not a foreseeable result of the misconduct found by the Fourth Circuit and was not even in part caused by Butler's misconduct. The Court will therefore tailor its findings accordingly.

**Objection 7**: Again Butler objects to GM's claims in relation to the reply brief in Cockrum on the grounds that the court was already aware of the Fourth Circuit's order. Insofar as this objection raises the issue that the contempt was not of Respondent's doing but of another lawyer's, such is overruled, as having been rejected by the Fourth Circuit. See In re General Motors, 61 F.3d at 257 n.1. Insofar as it appropriately maintains that GM could not have been harmed by Butler's response, this objection is identical to that raised in Objection 6, and the Court's findings above related to that objection apply equally here.

**Objection 8**: Butler argues, based on the particular task description, that these tasks were not caused by his misconduct but rather relate to "general defense efforts or litigation strategy in the underlying litigation." As the Court stated above, the Court will address each claim of GM, where necessary, in the context of the reasonableness of the action, its foreseeability to Butler, and the nexus to Butler's misconduct.

**Objection 9**: Respondent again raises the "nexus" argument, here stating that the description is vague or overbroad, thus claiming that the Court cannot guarantee that the entirety of the work related to Butler's contempt. This argument will be addressed to each particular task where necessary.

**Objection 10**: Respondent objects claiming that more information must be provided by GM to support the claim. Again, where made reasonably, the Court will address this objection. As far as Respondent's argument (raised now for the first time) that Respondent cannot be sure that certain attorneys are not (presumably inadvertently) double-billing, the Court has scrutinized the hours and attorneys to make certain that no single attorney has claimed work on the same day for different tasks which would give rise to such an implication. With respect to Moseley and Cockrum, given the immensity of the issue, the Court again notes that the mere fact that numerous attorneys worked on the same task at the same time does not raise any suspicion. The key for the determination (once foreseeability and causation have been determined) in those contexts is whether under the facts and circumstances involved this was reasonable.

**Objection 11**: Respondent objects here, stating that the claim cannot be reasonably understood or assessed without further explanation or description. This is identical to the objections in 9 and 10, and therefore the same applies here as above.

41

**Objection 12**: Respondent argues that these tasks are too long after the offending conduct to have been caused by that conduct. This is essentially a restatement of the proximate cause argument. Again this will be addressed where necessary.

**Objection 13**: Respondent argues that the fees requested for the contempt proceeding are grossly disproportionate to the harm caused by Butler. The Court has already rejected this argument by finding that the harm found by the Fourth Circuit was not limited to reactions by GM counsel in Moseley and Cockrum. Furthermore, even if it were so limited, the damages in these cases resulting from Butler's misconduct were significant. Finally, much of the fees requested by GM for the contempt proceeding relate to responses to filings by Butler and arguments raised by Butler which were unreasonable (e.g., the argument that Butler was not the wrong-doer in Cockrum, the argument that GM was never harmed despite the Fourth Circuit's clear statement to the contrary, and the motion in this Court for production of settlement documents). While not faulting Butler for demanding the process to which he might otherwise be due in such a proceeding, the Court notes that a large portion of those tasks claimed by GM would never have been undertaken had Butler taken more reasonable and justifiable positions in this Court. It is never surprising that where an attorney is the client and attends sessions, the client participates more than an ordinary client and the proceedings necessarily become more contentious.

The Fourth Circuit decision in Sun Publishing Co., Inc. v. Mecklenburg News, Inc., 823 F.2d 818 (4th Cir. 1987), cited by Butler for the proposition that exorbitant fee requests out of proportion to the underlying harm should be denied in toto, actually supports this Court's

42

decision in the present matter. In <u>Sun Publishing</u>, the underlying harm was approximately $85,000. <u>Id.</u> at 819. The trial court had *already* awarded approximately $300,000 in fees, and then denied a second supplemental application for fees without addressing <u>Barber</u>, based on the fact that the second request shocked the conscience of the court. The Fourth Circuit reviewed and affirmed this decision, noting that "as many as six lawyers from three different firms billed significant amounts of time in preparing for the short hearing on a simple issue." <u>Id.</u> at 820. Thus the Fourth Circuit examined the reasonableness of the request based on the totality of the circumstances, and relied on the simplicity of the issue primarily in determining that the second fee request was disproportionate. Here the underlying harm was highly significant; the matter was far from a "short hearing," based in large measure to Respondent's tactical choices, and thus was not a single "simple issue"; and Respondent himself has hired numerous law firms to aid in his defense. The numerous issues in this case therefore warrant greater time and attention by attorneys than did the issue in <u>Sun Publishing</u>. Moreover, the Fourth Circuit did not take issue with the initial fee award of approximately $300,000.00 when the harm was significantly less than this amount. This objection is therefore overruled.

**Objection 14**: Respondent here objects to tasks performed by GM counsel raising issues rejected by the Fourth Circuit or not addressed by that Court, such as the request to institute disciplinary proceedings against Respondent, etc. The Court will address those particular tasks objected to by Respondent on this ground where necessary (i.e., where it appears that such was an unreasonable or unnecessary request or demand by GM).

43

**Objection 15**:  Respondent argues that these tasks should not be recoverable because it is unreasonable to penalize Respondent for GM's "failure to make its case or prove its damages in a timely, efficient, forthcoming, or persuasive manner."  However, the Court finds that at all times before this Court GM's position has been reasonable and supported by a reasonable basis both in law and in fact (e.g., GM's position on work product protection and an evidentiary hearing).  As noted above, the same cannot be said of all of Respondent's positions.  Because these issues were complex and required some limited judicial innovation, the Court will not fault GM for making claims for work on positions that were ultimately rejected by this Court or the Fourth Circuit. This objection is therefore overruled.

**Objection 16**:  Respondent argues that these particular tasks in relation to the contempt proceeding occurred prior to the initiation of the contempt proceeding in the Fourth Circuit, and therefore are presumptively unreasonable.  To this extent, where there existed any possibility that these needed further explanation, the Court requested such.  GM withdrew these claims.  GM argues that the remaining tasks (only three, for a total of 3.1 hours of associates' time) were performed by GM counsel when Respondent exhibited behavior which GM counsel thought might be contempt of the Fourth Circuit's March 23rd Order.  These tasks mostly included research into the viability of this contempt proceeding, and conferences regarding the same.  So stated, GM's position is justified.  See Webb v. Board of Education of Dyer County, Tenn., 471 U.S. 234, 243, 105 S. Ct. 1923, 1928 (1985) (work "on the litigation" includes time spent drafting the initial pleadings and the work associated with the development of the theory of the case).  Based upon the factual account given by GM in its Response filed April 12, 1996, and not

44

contradicted by Respondent, these tasks were preliminary research performed when Butler courted contempt prior to the <u>Moseley</u> letter. Surely research performed prior to a case being filed is recoverable as part of the attorney's fees for that case. <u>See id.</u> In fact, Rule 11 of the Federal Rules of Civil Procedure requires reasonable inquiry into the law and facts of a case prior to ever filing the initial pleading. The tasks performed by GM counsel prior to the institution of the contempt proceeding which were not withdrawn were clearly related to this proceeding. Since this research was clearly utilized in this proceeding and the fees were billed and paid for by General Motors in this proceeding, these tasks, comprising 3.1 hours of work, are recoverable. This objection is therefore overruled.

**Objection 17**: Respondent objects to work performed by legal assistants/paralegals, insofar as such work is overhead and therefore allegedly taken into account in the billing rates of the lawyers in the law firms. Respondent has cited no authority for this proposition. GM has not claimed for tasks performed by the secretaries of those lawyers working on this matter (or for that matter for those services provided by other in-house groups), although it is highly likely that such staff spent considerable time on these matters. Those costs are generally included as "overhead." On the contrary, here GM has only claimed for tasks performed by paralegals which would have normally been, and in fact were, separately billed and paid for by GM. Thus recovery of these amounts is appropriate. <u>See</u> <u>Missouri v. Jenkins</u>, 491 U.S. 274, 289, 109 S. Ct. 2463, 2472 (1989) (identifying and condoning awards for paralegals and law clerks where separately-billed). This objection is therefore overruled.

45

## Chapter V:  The Butler Did It

*To every action there is always opposed an equal reaction: or, the mutual actions of two bodies upon each other are always equal, and directed to contrary parts.*[20]

The Court will now address each specific task claimed by GM and the objections to recovery for each task raised by Respondent.  Where the Court does not expressly address a particular objection, it should be presumed that it either has already been addressed above or the Court does not feel that the objection warrants any further attention.  In awarding or not awarding any particular task, the Court has further utilized the relevant factors in Barber v. Kimbrell's Inc.: the time and labor expended, the novelty and difficulty of the questions raised, the skill required to properly perform the legal serviced rendered, the customary fee for like work, the amount in controversy and the results obtained, the experience reputation and ability of the attorneys, and attorneys' fees awards in similar cases.  577 F.2d at 226 n.28.  For the convenience of the parties, the Court will utilize the numbering scheme adopted by Respondent in Appendix B of his most recent filing.  As stated above, the Court will note whether Butler's misconduct was the sole proximate cause ("sole") or the contributing cause ("contrib.") of the task.  Otherwise, the Court

---

[20]Sir Isaac Newton, Mathematical Principles of Natural Philosophy 13 (A. Motte trans., 1934) (1686) (Newton's Third Law of Motion).  Thus in battle, force must be met with equal opposing force, and adversaries in combat continuously try to gain advantage over the other by increasing the force or the manner of application.  What was or was not reasonable action by GM must be viewed in that context.

will not recommend GM recover ("denied") where GM has failed to satisfy its burden, or note that the claim for the particular item has been withdrawn ("WITHDRAWN").

## MOSELEY v. GENERAL MOTORS

A.     Respond to Butler's letter to Judge Thompson, *Kirkland & Ellis*

The Court finds that the tasks listed under this general heading were entirely in response to the contumacious letter authored by Respondent.

| Item | Title | Hours | Rate $/Hr | Description | Hrs. Awarded | Sole or Contrib. | Ttl $ |
|------|-------|-------|-----------|-------------|--------------|------------------|-------|
| 1 | Assc.[21] | 0.5 | 195 | Draft letters in response to Butler letters in CK cases | 0.5 | sole | 97.50 |
| 2 | Assc. | 1.0 | 195 | Draft letters in response to Butler letters in CK cases | 1.0 | sole | 195.00 |
| Total | | | | | | | **292.50** |

B.     Respond to Butler's Letter to Judge Thompson, *King & Spalding*

(See "A." above.)

| Item | Title | Hours | Rate $/Hr | Description | Hrs. Awarded | Sole or Contrib. | Ttl $ |
|------|-------|-------|-----------|-------------|--------------|------------------|-------|
| 42 | WITHDRAWN | | | | | | 0.00 |
| 43 | Part. | 0.4 | 225 | Conference; telephone conference with counsel. | 0.4 | sole | 90.00 |
| 44 | WITHDRAWN | | | | | | 0.00 |
| 45 | WITHDRAWN | | | | | | 0.00 |
| 46 | Part. | 2.5 | 225 | Study of Mr. Butler's letter of August 30 to Judge Thompson; conference with counsel re same; draft letters to Butler & Thompson; telephone conferences with counsel. | 2.5 | sole | 562.50 |
| 47 | Part. | 0.7 | 205 | Revise letter to Judge Thompson. | 0.7 | sole | 143.50 |

----

[21]"Assc." is an abbreviation of associate; "Part." is used for partner; "Leg.A." used for paralegal or legal assistant; "Couns." used for Of Counsel.

| Item | Title | Hours | Rate $/Hr | Description | Hrs. Awarded | Sole or Contrib. | Ttl $ |
|---|---|---|---|---|---|---|---|
| 48 | Part. | 1.0 | 225 | Conference with client, counsel; letter to Judge Thompson. | 1.0 | sole | 225.00 |
| 49 | Part. | 0.2 | 225 | Review Mr. Butler's letter to Judge Thompson; telephone conference re letter. | 0.2 | sole | 45.00 |
| 50 | Part. | 0.3 | 205 | Review letter to Judge Thompson; counsel with conference re same. | 0.3 | sole | 61.50 |
| 51 | Part. | 0.6 | 205 | Review Motion to Show Cause and Mr. Butler's letter to Judge Thompson. | 0.6 | sole | 123.00 |
| 52 | Part. | 0.3 | 235 | Review Mr. Butler's letter to Judge Thompson. | 0.3 | sole | 70.50 |
| 53 | | | | WITHDRAWN | | | 0.00 |
| **Total** | | | | | | | **1,321.00** |

C.    Initial Response to and Analysis of October 4 Order,[22] *Kirkland & Ellis*

The Court has found that Butler's letter materially affected the Moseley court's decision to allow the depositions of GM counsel. However, the Court notes that the description of work does not show that the work was solely limited to the deposition issue. Clearly the letter permeated the problem. Therefore the Court finds that Butler's letter contributed to and is responsible for a significant portion of each of the tasks claimed by General Motors and recommends awarding an appropriate portion related to what it finds was necessary and reasonable.

| Item | Title | Hours | Rate $/Hr | Description | Hrs. Awarded | Sole or Contrib. | Ttl $ |
|---|---|---|---|---|---|---|---|
| 3 | Part. | 2.75 | 285 | Client meetings re 10/3 order. | 1.4 | contrib. | 399.00 |
| 4 | Part. | 3.0 | 285 | Client and office meetings re 10/3 order. | 1.5 | contrib. | 427.50 |
| 5 | Part. | 2.0 | 260 | Review and analysis of October 3 order. | 1.0 | contrib. | 260.00 |
| 6 | | | | WITHDRAWN | | | 0.00 |
| 7 | Part. | 5.25 | 285 | Client, office conferences re 10/3 order; work during return travel. | 2.6 | contrib. | 741.00 |
| 8 | | | | WITHDRAWN | | | 0.00 |
| 9 | | | | WITHDRAWN | | | 0.00 |
| **Total** | | | | | | | **1,827.50** |

---

[22]In some places this order is referred to as the "October 3rd" order, and elsewhere it is referred to as the "October 4th" order. The order at issue in the case appears to have been filed on October 4th. Since Butler has not raised any objection or concern related to this apparent discrepancy, the Court assumes that the order was delivered to counsel on the third of October and filed on the fourth. The Court will discuss the order as if it was filed on the fourth.

## D.    Initial Response to and Analysis of October 4 Order, *King & Spalding*

(See "C." above.)

| Item | Title | Hours | Rate $/Hr | Description | Hrs. Awarded | Sole or Contrib. | Ttl $ |
|------|-------|-------|-----------|-------------|--------------|------------------|-------|
| 54 | | WITHDRAWN | | | | | 0.00 |
| 55 | Part. | 1.1 | 205 | Conference call with counsel and client re Court Order; pull materials together re same. | 0.5 | contrib. | 102.50 |
| **Total** | | | | | | | **102.50** |

## E.    Motion for Reconsideration and Vacation of October 4 Order, *Kirkland & Ellis*

As stated above, the Court finds that, although there was other evidence and information before Judge Thompson regarding attorney depositions, Butler's contumacious letter, as well as his suggestion at the September 8 hearing, were each causes of the order allowing depositions of GM counsel. Thus the letter itself contributed to GM's immediate responses to the October 4 order, and the Court further finds that this order was a foreseeable result of Butler's actions. However, the entirety of that motion to reconsider was not related to Butler's misconduct, or even more generally related entirely to attorney depositions. Therefore the Court has only recommended GM receive a portion of its hours for each task under this heading as it finds reasonable and necessary.

| Item | Title | Hours | Rate $/Hr | Description | Hrs. Awarded | Sole or Contrib. | Ttl $ |
|------|-------|-------|-----------|-------------|--------------|------------------|-------|
| 10 | | WITHDRAWN | | | | | 0.00 |
| 11 | Part. | 2.5 | 260 | Preparation of motion papers; conferences re same. | 1.0 | contrib. | 260.00 |
| 12 | | WITHDRAWN | | | | | 0.00 |
| 13 | Assc. | 2.5 | 195 | Outline and research motion for reconsideration. | 1.0 | contrib. | 195.00 |
| 14 | Part. | 2.0 | 260 | Work on motion papers; conference with counsel. | 0.8 | contrib. | 208.00 |
| 15 | Part. | 1.25 | 240 | Review and edit petition for reconsideration. | 0.5 | contrib. | 120.00 |
| 16 | Part. | 1.0 | 240 | Telephone conferences with counsel. | 0.4 | contrib. | 96.00 |
| 17 | Assc. | 6.0 | 195 | Work on motion for reconsideration and vacation. | 2.4 | contrib. | 468.00 |
| 18 | Part. | 3.0 | 260 | Work on edits, revisions to motion to reconsider October 4 order, various conferences re same and related issues. | 1.2 | contrib. | 312.00 |

49

| Item | Title | Hours | Rate $/Hr | Description | Hrs. Awarded | Sole or Contrib. | Ttl $ |
|------|-------|-------|-----------|-------------|--------------|------------------|-------|
| 19 | Assc. | 13.5 | 140 | Read and edit draft of Moseley motion to reconsider; telephone conference re same with counsel. | 5.4 | contrib. | 756.00 |
| 20 | Assc. | 4.0 | 175 | Draft section of motion for reconsideration; edit and revise motion for reconsideration. | 1.6 | contrib. | 280.00 |
| 21 | Assc. | 8.0 | 195 | Draft and edit moseley motion for reconsideration and vacation. | 3.2 | contrib. | 624.00 |
| 22 | Part. | 2.5 | 260 | Work on motion papers. | 1.0 | contrib. | 260.00 |
| 23 | Assc. | 1.0 | 175 | Review final motion for reconsideration; motion for protective orders. | 0.4 | contrib. | 70.00 |
| **Total** | | | | | | | **3,649.00** |

### F. Motion for Reconsideration and Vacation of October 4 Order, *King & Spalding*

(See "E." above.)

| Item | Title | Hours | Rate $/Hr | Description | Hrs. Awarded | Sole or Contrib. | Ttl $ |
|------|-------|-------|-----------|-------------|--------------|------------------|-------|
| 56 | Part. | 0.6 | 350 | Telephone conference with counsel; conference call with client re Motion for Reconsideration and other pleadings; interoffice calls; review of correspondence. | 0.2 | contrib. | 70.00 |
| 57 | | WITHDRAWN | | | | | 0.00 |
| 58 | Assc. | 1.1 | 145 | Review and revise Motion for Reconsideration and Protective Order briefs; conference with counsel and client. | 0.4 | contrib. | 58.00 |
| **Total** | | | | | | | **128.00** |

### G. Motions for Protective Order to Prevent Attorney Depositions, *Kirkland & Ellis*

Since the Court has found that Butler's letter was a significant contributing cause to the entry of the October 4th order, the Court also finds that GM's responses beyond the initial motion for reconsideration, which was not immediately successful, were foreseeable to Butler and therefore are also recoverable under the circumstances surrounding the case. Since attorney depositions were a major part of this response, the Court has tailored its recommendation to that which it finds below as reasonable and necessary. Item 32 has been denied by the Court as GM has failed to submit a copy of the appropriate bill containing that particular task.

| Item | Title | Hours | Rate $/Hr | Description | Hrs. Awarded | Sole or Contrib. | Ttl $ |
|------|-------|-------|-----------|-------------|--------------|------------------|-------|
| 24 | Assc. | 8.0 | 140 | Prepare oral arguments on protective orders; edit and proof brief; research legal issues re depositions. | 5.6 | contrib. | 784.00 |

| Item | Title | Hours | Rate $/Hr | Description | Hrs. Awarded | Sole or Contrib. | Ttl $ |
|---|---|---|---|---|---|---|---|
| 25 | Assc. | 0.5 | 140 | Prepare oral arguments on protective orders; edit and proof brief. | 0.4 | contrib. | 56.00 |
| 26 | WITHDRAWN | | | | | | 0.00 |
| 27 | Assc. | 6.25 | 175 | Work on researching, drafting and editing brief in support of a motion for a protective order preventing the depositions of attorneys. | 4.4 | contrib. | 770.00 |
| 28 | WITHDRAWN | | | | | | 0.00 |
| 29 | Assc. | 8.5 | 175 | Work on various pleadings, including research, draft and edit brief in support of a motion for a protective order preventing the depositions of attorneys. Finalize brief and motion for filing. | 6.0 | contrib. | 1050.00 |
| 30 | Part. | 6.0 | 260 | Work on motions to quash lawyer depositions; various conferences re same. | 4.2 | contrib. | 1092.00 |
| 31 | Assc. | 2.5 | 195 | Read and respond to letters from Butler re attorney depositions. Outline mandamus. | 1.8 | contrib. | 351.00 |
| 32 | Leg.A. | 4.0 | 90 | Proof, edit, cite-check brief. | 2.8 | denied | 0.00 |
| **Total** | | | | | | | **4,103.00** |

## H.  Motions for Protective Order to Prevent Attorney Depositions, *King & Spalding*

(See "G." above.)

| Item | Title | Hours | Rate $/Hr | Description | Hrs. Awarded | Sole or Contrib. | Ttl $ |
|---|---|---|---|---|---|---|---|
| 59 | Assc. | 8.2 | 145 | Prepare motions for protective order. | 5.7 | contrib. | 826.50 |
| 60 | Part. | 0.4 | 205 | Conference with counsel re protective order motions. | 0.3 | contrib. | 61.50 |
| 61 | Assc. | 8.9 | 145 | Prepare briefs in support of motion for protective order. | 6.2 | contrib. | 899.00 |
| 62 | Part. | 3.9 | 205 | Review briefs in support of Motions for Protective Orders; conference with counsel re same; review materials re same. | 2.7 | contrib. | 553.50 |
| 63 | Part. | 9.8 | 205 | Revise Motions and Briefs in Support of Protective Orders. | 6.9 | contrib. | 1414.50 |
| 64 | Assc. | 3.3 | 145 | Prepare briefs in support of motions for order; assist with Motion for Reconsideration. | 2.3 | contrib. | 333.50 |
| 65 | Part. | 1.1 | 225 | Conference re lawyer depositions in Moseley. | 0.8 | contrib. | 180.00 |
| 66 | WITHDRAWN | | | | | | 0.00 |
| 67 | Assc. | 3.5 | 145 | Revise Motion for protective order; prepare petition for writ of mandamus. | 2.4 | contrib. | 348.00 |
| 68 | Part. | 4.4 | 205 | Revise Motion and Brief in Support of Protective Order for lawyer depositions. | 3.1 | contrib. | 635.50 |
| 69 | WITHDRAWN | | | | | | 0.00 |
| 70 | WITHDRAWN | | | | | | 0.00 |
| **Total** | | | | | | | **5,252.00** |

I.      October 13 Hearing Before Judge Thompson, *Kirkland & Ellis*

The Court has reviewed the transcript of the October 13 hearing and notes that much of that hearing was spent on discovery issues not related to Judge Thompson's suggestion that GM counsel be deposed. The Court finds that the hearing itself would not have taken place without the contumacious conduct, and the hearing was foreseeable after the October 4th order was entered; however it finds that only a small fraction of the hearing was spent on issues related to Respondent's contumacious conduct, and therefore tailors the recommendation to what it finds below as reasonable and necessary.

| Item | Title | Hours | Rate $/Hr | Description | Hrs. Awarded | Sole or Contrib. | Ttl $ |
|------|-------|-------|-----------|-------------|--------------|------------------|-------|
| 33 | Part. | 1.5 | 285 | Conferences re hearing. | 0.2 | contrib. | 57.00 |
| 34 | Part. | 2.0 | 260 | Conference with counsel re hearing. Confer with client. | 0.3 | contrib. | 78.00 |
| 35 | | WITHDRAWN | | | | | 0.00 |
| 36 | Part. | 4.25 | 260 | Prepare for court hearing; attend hearing; conference after hearing; plan mandamus. | 0.6 | contrib. | 156.00 |
| Total | | | | | | | **291.00** |

J.      October 13 Hearing Before Judge Thompson, *King & Spalding*

(See "I." above.)

| Item | Title | Hours | Rate $/Hr | Description | Hrs. Awarded | Sole or Contrib. | Ttl $ |
|------|-------|-------|-----------|-------------|--------------|------------------|-------|
| 71 | Part. | 1.5 | 235 | Review and revise motions; review and revise Motion for Protective Order; prepare argument on Motion for Reconsideration/Vacation of October 4 Order. | 0.2 | contrib. | 47.00 |
| 72 | Part. | 4.0 | 350 | Review draft of memorandum of law in support of General Motors' Motion for Protective Order; hearing before Judge Thompson. | 0.5 | contrib. | 175.00 |
| 73 | Part. | 3.7 | 205 | Hearing on General Motors' Motion to Reconsider and for Protective Order; various conferences re same; post-hearing meeting. | 0.5 | contrib. | 102.50 |
| 74 | Part. | 0.8 | 350 | Review Mr. Butler's post-hearing letter to Judge Thompson and response; review Mr. Butler's letter to Judge Thompson; conference with counsel re same. | 0.1 | contrib. | 35.00 |
| Total | | | | | | | **359.50** |

K.     Prepare for Possible Writ of Mandamus, *Kirkland & Ellis*

The Court finds that such an effort on behalf of GM by its attorneys was both reasonable and foreseeable to Butler under the circumstances, once its other efforts were not immediately successful. On the other hand, the Court has reduced the number of hours on these tasks to estimate a more appropriate total amount of time to work on this document, which was not filed in the Georgia court. Thus, what is recommended below is what it finds was reasonable and necessary.

| Item | Title | Hours | Rate $/Hr | Description | Hrs. Awarded | Sole or Contrib. | Ttl $ |
|------|-------|-------|-----------|-------------|--------------|------------------|-------|
| 37 | Assc. | 5.0 | 140 | Research and edit motion re video depositions; draft outline of petition for writ of mandamus. | 3.5 | contrib. | 490.00 |
| 38 | | WITHDRAWN | | | | | 0.00 |
| 39 | Part. | 0.5 | 375 | Analysis of mandamus strategy; telephone call to counsel. | 0.4 | contrib. | 150.00 |
| 40 | | WITHDRAWN | | | | | 0.00 |
| 41 | Part. | 1.5 | 375 | Analysis of mandamus strategy; meeting; review and edit of draft. | 1.0 | contrib. | 375.00 |
| Total | | | | | | | 1,015.00 |

L.     Prepare for Possible Writ of Mandamus, *King & Spalding*

(See "K." above.)

| Item | Title | Hours | Rate $/Hr | Description | Hrs. Awarded | Sole or Contrib. | Ttl $ |
|------|-------|-------|-----------|-------------|--------------|------------------|-------|
| 75 | Part. | 1.2 | 350 | Review memorandum from counsel re depositions and mandamus. | 0.8 | contrib. | 280.00 |
| 76 | Assc. | 1.7 | 145 | Gather materials for mandamus proceeding and motions for protective order. | 1.2 | contrib. | 174.00 |
| 77 | Part. | 0.7 | 205 | Review mandamus papers. | 0.5 | contrib. | 102.50 |
| Total | | | | | | | 556.50 |

## COCKRUM v. GENERAL MOTORS

M.     Drafting Reply Brief re: Attorney Depositions, *Kirkland & Ellis*

A significant portion of this brief related to responding to Butler's claims regarding the Fourth Circuit's order. Thus the Court has found that Butler's conduct contributed to the cause of each of these items, and that these responses were foreseeable to Butler at the time he filed his brief. However, the Court has reduced the time for each of the tasks to approximate as closely as possible the true amount of time GM counsel were addressing Butler's misconduct directly, given that the court had already been made aware of the Fourth Circuit's March 23rd Order. The finding below is what the Court finds was reasonable and necessary.

| Item | Title | Hours | Rate $/Hr | Description | Hrs. Awarded | Sole or Contrib. | Ttl $ |
|---|---|---|---|---|---|---|---|
| 78 | Part. | 0.5 | 260 | Review filings and address reply issue re lawyer deposition. | 0.1 | contrib. | 26.00 |
| 79 | Part. | 7.5 | 240 | Draft Reply Brief re attorney depositions. | 1.0 | contrib. | 240.00 |
| 80 | Part. | 3.0 | 240 | Edit Reply Brief re attorneys. | 0.4 | contrib. | 96.00 |
| 81 | Part. | 7.5 | 240 | Redrafting Reply Brief re attorney depositions. | 1.0 | contrib. | 240.00 |
| 82 | Part. | 7.0 | 240 | Redrafting Reply Brief re attorney depositions. | 0.9 | contrib. | 216.00 |
| 83 | Part. | 5.5 | 240 | Editing Reply Brief re affidavits. | 0.7 | contrib. | 168.00 |
| 84 | Part. | 4.0 | 240 | Edit Reply Brief re attorney depositions. | 0.5 | contrib. | 120.00 |
| 85 | Part. | 0.25 | 240 | Review draft of Reply Brief re lawyer depositions. | 0.1 | contrib. | 24.00 |
| 86 | Part. | 7.5 | 240 | Meeting with counsel and client and review Reply Brief re attorney depositions. | 1.0 | contrib. | 240.00 |
| 87 | Assoc. | 4.0 | 175 | Edit Reply Brief on attorney depositions. | 0.5 | contrib. | 87.50 |
| 88 | Assoc. | 2.0 | 175 | Review Plaintiffs' brief opposing General Motors' Motion for Protective Order. | 0.3 | contrib. | 52.50 |
| Total | | | | | | | 1,510.00 |

N.    Drafting Reply Brief re: Attorney Depositions, *Shaw, Pittman, Potts & Trowbridge*

(See "M." above.)

| Item | Title | Hours | Rate $/Hr | Description | Hrs. Awarded | Sole or Contrib. | Ttl $ |
|---|---|---|---|---|---|---|---|

| 89 | Part. | 10.5 | 225 | Response to plaintiff in Cockrum. | 1.4 | contrib. | 315.00 |
|---|---|---|---|---|---|---|---|
| 90 | Part. | 12.0 | 225 | Response to plaintiff in Cockrum. | 1.6 | contrib. | 360.00 |
| 91 | Assc. | 5.0 | 185 | Preparation of portion of reply brief re protective order. | 0.7 | contrib. | 129.50 |
| 92 | Part. | 11.5 | 225 | Response to plaintiff in Cockrum. | 1.5 | contrib. | 337.50 |
| 93 | Part. | 5.0 | 225 | Response to plaintiff in Cockrum. | 0.6 | contrib. | 135.00 |
| 94 | Part. | 11.0 | 225 | Response to plaintiff in Cockrum. | 1.4 | contrib. | 315.00 |
| 95 | Part. | 6.0 | 225 | Revise reply memorandum; teleconferences with counsel and client. | 0.8 | contrib. | 180.00 |
| 96 | Part. | 11.8 | 225 | Response to plaintiff in Cockrum. | 1.5 | contrib. | 337.50 |
| 97 | Part. | 5.0 | 225 | Revise reply brief; teleconference with counsel and client. | 0.6 | contrib. | 135.00 |
| 98 | Couns. | 4.5 | 350 | Review/revise reply memo; teleconference with counsel. | 0.6 | contrib. | 210.00 |
| 99 | WITHDRAWN | | | | | | 0.00 |
| 100 | Part. | 8.3 | 225 | Reviewing material; comments on draft; memo to file. | 1.1 | contrib. | 247.50 |
| 101 | Couns. | 1.3 | 350 | Teleconferences with counsel and client; review draft reply. | 0.2 | contrib. | 70.00 |
| 102 | Couns. | 5.2 | 350 | Review reply draft; teleconferences with counsel re same. | 0.7 | contrib. | 245.00 |
| 103 | WITHDRAWN | | | | | | 0.00 |
| 104 | Couns. | 9.3 | 350 | Teleconferences re reply draft; revise reply brief. | 1.2 | contrib. | 420.00 |
| 105 | WITHDRAWN | | | | | | 0.00 |
| 106 | Couns. | 12.0 | 350 | Travel (work on plane) and meeting with counsel re reply brief; revise reply brief; review factual materials. | 1.6 | contrib. | 560.00 |
| 107 | Couns. | 9.0 | 350 | Travel (work on plane) and meeting with counsel re reply brief; revise reply brief; review factual materials. | 1.2 | contrib. | 420.00 |
| 108 | Couns. | 1.3 | 350 | Teleconferences with client and counsel re reply brief filing; conferences with counsel. | 0.2 | contrib. | 70.00 |
| **Total** | | | | | | | **4,487.00** |

In sum, the Court finds that Respondent is solely responsible for damages in the amount of $1613.50 and contributorily responsible for damages in the amount of $17,284.00 in Moseley, and contributorily responsible for damages in the amount of $5997.00 in Cockrum. The Court therefore finds that GM's "expenses germinating from Butler's misconduct in the Georgia state court and the United States District Court for the District of Kansas" come to a total of $24,894.50. These amounts are also appropriate in light of the Barber factors, given that the

issue was extremely important to the client, the quality of representation was exceptional, the underlying issues were complex, and the number of hours and rates were reasonable under these conditions.

## Chapter VI:  The Butler Pays For It

*Recompense injury with justice, recompense kindness with kindness.*[23]

As the Court stated previously, the determination of costs with respect to the contempt proceeding itself is substantially different from the determination of actual harm caused by Butler's misconduct.  For one, the Fourth Circuit actually required this court to recommend GM attorneys' fees for the contempt proceeding, whereas the Fourth Circuit did not specify exactly what other harm was caused by Butler's misconduct in Moseley and Cockrum.  In re General Motors, 61 F.3d at 259 (stating that "GM is entitled to reasonable costs and attorney's fees for the contempt proceeding before this court.").  There is absolutely no evidence whatsoever that GM suspected it might recover its attorney's fees for responding to GM's contempt in Moseley and Cockrum.  There the payment of the bills without any expectation of reimbursement is itself evidence of its reasonableness, since the question is whether the expenditure by General Motors was a reasonable one in the eyes of General Motors or a reasonable corporation in the same position as GM.  On the other hand, this contempt proceeding was initiated for a different purpose.  Thus the recovery of the costs of these proceeding may have been, if not intended, at

---

[23]Confucius, The Confucian Analects, bk. 14:36, iii.

56

least suspected by GM as a possible remedy. The Court must therefore adopt a more rigid test for GM's claims for attorneys' fees resulting from this proceeding. With respect to Moseley and Cockrum, the Barber factors were an analogy; here they control.

In awarding attorneys' fees (as opposed to "harm" which took form as attorneys' fees), the district court should first focus on the time and labor expended and the customary fees for like work. Colonial Williamsburg Foundation v. Kittinger Co., 38 F.3d 133, 138 (4th Cir. 1994) (citing Barber v. Kimbrell's Inc., 577 F.2d at 226 n.28). "After determining the initial fee, the district court should consider whether to adjust the fee on the basis of other factors, briefly explaining any adjustment." Colonial Williamsburg, 38 F.3d at 138.

The Court finds that the rates charged by GM counsel were reasonable for the type of work performed and the relative novelty of the issues addressed in this proceeding (as well as the manner in which they were addressed). Butler conceded this at oral argument. Nor has he submitted the rates of his own counsel for comparison by the Court. Finally, none of the rates charged by GM counsel, given the individual attorneys, firms, and cities involved, strike the Court as out-of-the-ordinary.

Butler has argued that the total number of hours spent by GM counsel on this proceeding were unreasonable in relation to the amount of harm caused by Butler's misconduct. However, the Court has already shown that this is not a major concern, given the Court's interpretation of the Fourth Circuit order and Sun Publishing Co., where harm was calculated to be approximately $85,000.00, yet approximately $300,000.00 in fees were awarded. 823 F.2d at 819. See also Colonial Williamsburg, 792 F.Supp. at 1408 (ordering approximately $194,000.00 profits disgorged), 38 F.3d at 138 (affirming district court's finding of civil compensatory contempt and

57

award of over $360,000.00 in attorneys' fees and costs). Even if the amounts were required to be proportionate, GM has only requested recovery of a portion of what the Fourth Circuit deemed recoverable; had GM requested compensation for all of expenses "germinating" from Butler's misconduct "in other jurisdictions" outside of the Georgia state court and Kansas federal district court, the difference between the "harm" claimed and the attorneys' fees requested would potentially have been negligible. It must be restated here that GM requested only its attorneys' fees in both Moseley and Cockrum and in the contempt proceeding, not travel, photocopying, telephone or other expenses which would certainly have been considerable and attributable to Butler's misconduct. Thus given the complexity of this matter, the number of counsel retained by Respondent, the number of complex (as well as questionable) issues raised repeatedly by Respondent, and the lengthy process it has taken for this Court to finally reach its decision, the total number of hours spent by GM counsel on this matter are clearly not excessive. Again, Respondent has failed to identify the total number of hours his counsel have spent in this matter. Since this is such an unusual matter, this failure can only be seen, despite Respondent's protestations, as a concession that GM's counsel's total efforts actually were reasonable.

As to the rest of the factors in Barber v. Kimbrell's, 577 F.2d at 226 n.28, the Court notes that Respondent has made few specific objections based on this list. However the Court will address these factors as well. The questions in this proceeding, such as the need for an evidentiary hearing privilege, work product and waiver issues, were both novel and difficult. Counsel for GM, though numerous, were not unreasonably so, especially in light of Respondent's retention of an equal number of counsel of similar experience, reputation and ability. As for the "customary fee for like work" and "awards in similar cases," this matter is not distinguishable

58

from the Fourth Circuit's affirmance of an attorney fee award of over $360,000 in a civil compensatory contempt matter where the complaining party sought enforcement of a consent decree. Colonial Williamsburg, 38 F.3d at 138. The Court therefore finds that none of the fees charged to GM by its counsel were excessive, inappropriate, or unwarranted. The Court will therefore proceed to the reasonableness of GM's recovery of these fees, with respect to each general task performed by GM's attorneys.

Respondent chooses in this case to indicate a plea which could be considered a "plea to the general issue," i.e., the common law defense of "prove it all--I deny it all." Fortunately common law pleading ceased to exist in most every area of the country more than a generation ago. (In most areas two or more generations ago.) The Court gave Respondent every opportunity to indicate what would have been reasonable attorney's fees for the contempt proceeding, as well as to state any specific objections to any portion of GM's claims. The Court intimated to Butler that the time expended by his attorneys would be indicative of what would be reasonable. He would not submit his own attorneys' time, nor has he indicated what would have been reasonable.[24] As stated before, the Court has dealt with numerous fee petitions in the past, and will measure GM's claims accordingly. The Court feels strongly that it was reasonable for GM's attorneys to expend the time and effort applied to pursue these proceedings. The Court must determine, however, how much of the time was actually necessary and finds the following hours were reasonable and necessary.

---

[24]As the Court discussed previously, Butler's suggestion of $5000.00 in attorneys fees, given the Fourth Circuit's contempt order and then length of these proceedings, might have been better left unsaid.

The Court in addition notes that it has taken into account a 4% discount for all of the attorneys' fees incurred by GM through the law firm of Kirkland & Ellis in the year 1995. Based on the representations of GM counsel, that discount applies to no other year, and no other discount applied to GM's attorney bills.[25]

A.    Motion for Order to Show Cause why Butler should not be held in contempt, *Kirkland & Ellis*

| Item | Title | Hours | Rate $/Hr | Description | Hrs. Awarded | Total |
|------|-------|-------|-----------|-------------|--------------|-------|
| 109 | Part. | 0.25 | 375 | Discussion re CA 4 strategy re possible contempt/sanctions motion. | 0.25 | 93.75 |
| 110 | Assc. | 8.0 | 195 | Draft motion for contempt in the 4th Circuit. | 8.0 | 1560.00 |
| 111 | Leg.A. | 6.0 | 90 | Assist with motion for order to show cause in the fourth circuit. | 6.0 | 540.00 |
| 112 | Part. | 1.5 | 375 | Telephone calls; review and edit motion for order to show cause. | 1.5 | 562.50 |
| 113 | Assc. | 4.75 | 140 | Begin memo on legal issues; conference re instruction from counsel; research legal issues; read our motion to show cause. | 4.75 | 665.00 |
| 114 | Assc. | 1.5 | 175 | Begin work on reply re GM's motion in the 4th Circuit for an order to show cause why he would not be held in contempt. | 1.5 | 262.50 |
| 115 | Assc. | 4.25 | 175 | Begin planning GM's reply brief on GM's motion in the 4th Circuit for an order to show cause why he should not be held in contempt. | 4.25 | 743.75 |

[25]One billing rate of one partner in one firm was reduced by $25/per hour, and the Court has verified that the discount was applied to the submission to the Court through GM's attorney bills also submitted to the Court.

Finally, in the Court's most recent order it stated that there was an apparent discrepancy in the amount claimed by GM and the Court's independent calculation. GM's figure was smaller not because of any impropriety, but because of the discounts GM received and the withdrawal of one 15-hour time entry previously noted. However, in cross checking GM's bills with its submission, the Court did find a few errors in the rates charged on the submission to the Court (all the errors were in the respondent's favor). The Court has therefore resolved the discrepancies in respondent's favor, using the lower rate shown in the in camera submission.

| Item | Title | Hours | Rate $/Hr | Description | Hrs. Awarded | Total |
|------|-------|-------|-----------|-------------|--------------|-------|
| 116 | Assc. | 12.75 | 175 | Research reply brief for GM's 4th Circuit Motion on contempt. | 12.75 | 2231.25 |
| 117 | Assc. | 2.5 | 175 | Research reply brief for GM's 4th Circuit Motion for an Order to Show Cause. | 2.5 | 437.5 |
| 118 | Assc. | 2.25 | 140 | Research legal and factual issues relating to 4th Circuit contempt hearing. Collect cases and articles for counsel. | 2.25 | 315.00 |
| 119 | Assc. | 5.0 | 195 | Fourth Circuit reply. | 5.0 | 975.00 |
| 120 | Leg.A. | 3.0 | 90 | Assist attorney in research. | 3.0 | 270.00 |
| **Total** | | | | | | 8,656.25 |

B. <u>Supplemental Memorandum in support of motion for order to show cause</u>, *Kirkland & Ellis*

| Item | Title | Hours | Rate $/Hr | Description | Hrs. Awarded | Total |
|------|-------|-------|-----------|-------------|--------------|-------|
| 121 | Assc. | 7.5 | 175 | Work on GM motion to submit additional evidence on record for the hearing on the Court's order to show cause; research various legal issues re contempt. | 7.5 | 1312.50 |
| 122 | Leg.A. | 2.5 | 90 | Collect cases; collect requested materials for counsel. | 2.5 | 225.00 |
| 123 | Assc. | 3.0 | 140 | Research re legal issues for contempt; write brief memo. | 3.0 | 420.00 |
| 124 | Assc. | 8.5 | 175 | Draft, edit and finalize motion to submit additional documentary evidence into the record for the hearing on the Court's order to show cause. Consider and research various issues. | 8.5 | 1487.50 |
| 125 | Leg.A. | 5.0 | 90 | Proof and assemble exhibits to GM's submission of additional information to the Fourth Circuit. | 5.0 | 450.00 |
| 126 | Assc. | 3.0 | 140 | Draft affidavit related to Fourth Circuit filing. | 3.0 | 420.00 |
| **Total** | | | | | | 4,315.00 |

C. <u>Prepare for and attend October 20 hearing</u>, *Kirkland & Ellis*

| Item | Title | Hours | Rate $/Hr | Description | Hrs. Awarded | Total |
|------|-------|-------|-----------|-------------|--------------|-------|
| 127 | Part. | 4.0 | 260 | Meetings to prepare for Fourth Circuit contempt hearing and collect materials; discuss with counsel. | 4.0 | 1040.00 |
| 128 | Part. | 2.0 | 375 | Meeting with counsel and client re hearing. | 2.0 | 750.00 |
| 129 | Part. | 5.0 | 310 | Preparation for hearing. | 5.0 | 1550.00 |
| 130 | Part. | 4.0 | 310 | Preparation for hearing. | 4.0 | 1240.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 131 | Assc. | 6.0 | 175 | Draft motion to submit additional evidence; research, analyze and prepare materials for contempt hearing. | 6.0 | 1050.00 |
| 132 | Part. | 3.5 | 375 | Preparation for 4th Circuit contempt hearing; telephone calls to counsel. | 3.5 | 1312.50 |
| 133 | Part. | 5.0 | 310 | Preparation for contempt hearing. | 5.0 | 1550.00 |
| 134 | Part. | 6.75 | 375 | Preparation for 4th Circuit contempt hearing; analysis of materials; review of case law. | 6.75 | 2531.25 |
| 135 | Assc. | 1.75 | 140 | Conference re further research for 4th Circuit. | 1.75 | 245.00 |
| 136 | Assc. | 10.00 | 175 | Draft motion to submit additional evidence; research, analyze and prepare materials for contempt hearing. | 10.0 | 1750.00 |
| 137 | Part. | 5.0 | 375 | Preparation for 4th Circuit contempt hearing; analysis of materials and case law. | 5.0 | 1875.00 |
| 138 | Part. | 6.0 | 310 | Preparation for 4th Circuit hearing. | 6.0 | 1860.00 |
| 139 | Assc. | 2.0 | 140 | Meet with counsel re contempt hearing. | 2.0 | 280.00 |
| 140 | Assc. | 15.25 | 175 | Research, analyze, and prepare materials for contempt hearing. | 15.25 | 2668.75 |
| 141 | Assc. | 9.0 | 195 | Prepare for contempt hearing. | 9.0 | 1755.00 |
| 142 | Part. | 3.0 | 375 | Travel (work during travel) to attend and participate in 4th Circuit contempt hearing. | 3.0 | 1125.00 |
| 143 | Part. | 6.0 | 310 | Prepare for 4th Circuit hearing. | 6.0 | 1860.00 |
| 144 | Leg.A. | 6.5 | 90 | Collect materials to prepare for 4th Circuit hearing. | 6.5 | 585.00 |
| 145 | Assc. | 5.0 | 140 | Research for contempt argument; edit papers at request of counsel. | 5.0 | 700.00 |
| 146 | Assc. | 14.75 | 175 | Preparation during travel to South Carolina for the contempt hearing; continue to prepare for the contempt hearing. | 14.75 | 2581.25 |
| 147 | Assc. | 15.00 | 195 | Prepare for the 4th Circuit contempt hearing with counsel in South Carolina. | 15.0 | 2925.00 |
| 148 | Part. | 1.5 | 260 | Various discussions re contempt hearing, and approaches to contempt hearing. | 1.5 | 390.00 |
| 149 | Part. | 13.5 | 375 | Preparation of 4th Circuit argument with counsel; analysis of cases; meeting with client. | 13.5 | 5062.50 |
| 150 | Part. | 12.0 | 310 | Prepare for oral argument; meet with counsel; review materials. | 12.0 | 3720.00 |
| 151 | Assc. | 11.25 | 175 | Continue preparation for the contempt hearing, attend hearing and post-hearing meetings; work on plane during return. | 11.25 | 1968.75 |
| 152 | Assc. | 11.0 | 195 | Prepare for contempt hearing. | 11.0 | 2145.00 |
| 153 | Part. | 0.5 | 260 | Update re contempt hearing. | 0.5 | 130.00 |
| 154 | Part. | 8.5 | 375 | Preparation for 4th Circuit argument; argument to the 4th Circuit; discussion of post-argument strategy; work on plane during return. | 8.5 | 3187.50 |
| 155 | Part. | 7.5 | 310 | Prepare for hearing; attend hearing before 4th Circuit; attend post-hearing discussion; work on plane during return. | 7.5 | 2325.00 |
| 156 | Part. | 1.0 | 310 | Follow-up matters re contempt hearing. | 1.0 | 310.00 |
| **Total** | | | | | | 50,472.50 |

D.      Supplemental Memorandum responding to letter to *Moseley* Court and to the Fourth Circuit, *Kirkland & Ellis*

The Court has denied an award for task number 157 as GM failed to submit a copy of the bill in which this item appeared.

| Item | Title | Hours | Rate $/Hr | Description | Hrs. Awarded | Total |
|------|-------|-------|-----------|-------------|--------------|-------|
| 157 | Assc. | 2.5 | 195 | Review plaintiffs' response in Fourth Circuit and draft response. | 0.00 | 0.00 |
| 158 | Assc. | 7.0 | 195 | Draft and edit motions regarding protective order and contempt supplement. | 7.0 | 1365.00 |
| 159 | Assc. | 2.0 | 195 | Finalize contempt supplement. | 2.0 | 390.00 |
| 160 | Assc. | 1.25 | 155 | Review legal authority; edit supplemental 4th Circuit filing seeking contempt order. | 1.25 | 193.75 |
| 161 | Assc. | 8.0 | 195 | Respond to reply brief; finalize and file contempt supplement. | 8.0 | 1560.00 |
| Total | | | | | | 3,508.75 |

E.      Reply in Support of Supplemental Memorandum, *Kirkland & Ellis*

| Item | Title | Hours | Rate $/Hr | Description | Hrs. Awarded | Total |
|------|-------|-------|-----------|-------------|--------------|-------|
| 162 | Assc. | 0.5 | 140 | Meeting with counsel re 4th Circuit reply. | 0.5 | 70.00 |
| 163 | Assc. | 3.0 | 140 | Draft reply to response to GM motion to supplement 4th Circuit record. | 3.0 | 420.00 |
| 164 | Part. | 0.25 | 375 | Telephone conversation with counsel re 4th Circuit record. | 0.25 | 93.75 |
| 165 | Assc. | 0.5 | 155 | Add paragraph to the 4th Circuit contempt filing. | 0.5 | 77.50 |
| 166 | Assc. | 0.75 | 140 | Edit 4th Circuit reply. | 0.75 | 105.00 |
| 167 | Part. | 2.25 | 375 | Review and edit 4th Circuit filings; telephone conversations with counsel. | 2.25 | 843.75 |
| Total | | | | | | 1,610.00 |

F.      Supporting Memorandum for additional relief on motion for order to show cause, *Kirkland & Ellis*

The Court finds that this motion, unlike each and every other filing in this matter, was not necessary to the proceedings, and therefore denies GM recovery for these tasks.

63

| Item | Title | Hours | Rate $/Hr | Description | Hrs. Awarded | Total |
|------|-------|-------|-----------|-------------|--------------|-------|
| 168 | Assc. | 4.0 | 205 | Draft 4th Circuit supplement on contempt. | 0.0 | 0.00 |
| 169 | Assc. | 2.5 | 205 | Draft 4th Circuit motion re contempt. | 0.0 | 0.00 |
| 170 | Leg.A. | 2.0 | 94 | Proof, cite-check supplement to 4th Circuit record on order to show cause. | 0.0 | 0.00 |
| 171 | Assc. | 3.0 | 205 | Work on 4th Circuit research. | 0.0 | 0.00 |
| 172 | Assc. | 4.0 | 205 | Review 4th Circuit cases. | 0.0 | 0.00 |
| 173 | Assc. | 1.5 | 165 | Edit draft of motion for expanded relief in 4th Circuit; research re same. | 0.0 | 0.00 |
| 174 | Assc. | 1.25 | 205 | Review 4th Circuit pleadings with counsel. | 0.0 | 0.00 |
| 175 | Part. | 3.5 | 260 | Work on edit and revision of 4th Circuit motion; conference with counsel re same. | 0.0 | 0.00 |
| 176 | Assc. | 0.25 | 165 | Collect cases for counsel to review. | 0.0 | 0.00 |
| 177 | Part. | 3.0 | 390 | Review and edit draft brief; review and analysis of case law. | 0.0 | 0.00 |
| 178 | Assc. | 1.25 | 165 | Review latest draft of motion for expanded relief; discuss same with counsel. | 0.0 | 0.00 |
| 179 | Part. | 0.25 | 390 | Telephone call with counsel re draft brief; discussion re appellate strategy. | 0.0 | 0.00 |
| 180 | Assc. | 1.0 | 165 | Edit draft motion for expanded relief in 4th Circuit; discuss same with counsel. | 0.0 | 0.00 |
| 181 | Part. | 1.25 | 390 | Review and edit draft 4th Circuit submission. | 0.0 | 0.00 |
| 182 | Assc. | 1.75 | 205 | Edit 4th Circuit brief. | 0.0 | 0.00 |
| 183 | Assc. | 1.0 | 165 | Edit and proofread latest draft of motion for expanded relief. | 0.0 | 0.00 |
| 184 | Part. | 1.5 | 390 | Review and edit final draft of brief; telephone call to counsel. | 0.0 | 0.00 |
| 185 | Assc. | 1.25 | 205 | Telephone conferences; finalize 4th Circuit pleading. | 0.0 | 0.00 |
| **Total** | | | | | | 0.00 |

G.     Respond to Motion to Dismiss Contempt Proceedings, *Kirkland & Ellis*

| Item | Title | Hours | Rate $/Hr | Description | Hrs. Awarded | Total |
|------|-------|-------|-----------|-------------|--------------|-------|
| 186 | Assc. | 0.75 | 185 | Review motion to dismiss contempt proceedings. | 0.75 | 138.75 |
| 187 | Leg.A. | 1.0 | 44 | Pull selected materials for reply brief, obtain cases from Westlaw. | 1.0 | 44.00 |
| 188 | Assc. | 8.0 | 205 | Review motion to dismiss and begin work on 4th Circuit papers. | 8.0 | 1640.00 |
| 189 | Assc. | 12.5 | 185 | Research re contempt; draft response to motion to dismiss the 4th Circuit contempt proceedings. | 12.5 | 2312.50 |
| 190 | Part. | 1.5 | 390 | Review and analysis of motion; review of draft outline; telephone conference with counsel. | 1.5 | 585.00 |

| 191 | Leg.A. | 3.0 | 98 | Cite check brief. | 3.0 | 294.00 |
|---|---|---|---|---|---|---|
| 192 | Assc. | 9.75 | 165 | Revise and edit response to motion to dismiss contempt proceedings; research and draft argument; review case law. | 9.75 | 1608.75 |
| 193 | Assc. | 6.0 | 205 | Draft sections for 4th Circuit papers. | 6.0 | 1230.00 |
| 194 | Assc. | 9.0 | 185 | Draft response to motion to dismiss 4th Circuit contempt proceedings. | 9.0 | 1665.00 |
| 195 | Part. | 2.0 | 390 | Review and edit draft response to motion. | 2.0 | 780.00 |
| 196 | Leg.A. | 0.5 | 44 | Index new pleadings, file all pleadings and correspondence. | 0.5 | 22.00 |
| 197 | Assc. | 3.75 | 165 | Conferences with counsel and document filing company; draft, revise, edit and file motion for extension of time. | 3.75 | 618.75 |
| 198 | Assc. | 5.0 | 205 | Edit 4th Circuit papers and re-write sections; call Clerk's office. | 5.0 | 1025.00 |
| 199 | Assc. | 2.0 | 185 | Edit draft reply to motion to dismiss. | 2.0 | 370.00 |
| 200 | Part. | 1.5 | 390 | Review and edit draft brief; discussion with counsel. | 1.5 | 585.00 |
| 201 | Assc. | 2.0 | 185 | Edit draft reply to motion to dismiss. | 2.0 | 370.00 |
| 202 | Part. | 4.0 | 390 | Research of cases cited; review and edit draft brief. | 4.0 | 1560.00 |
| 203 | Assc. | 4.25 | 165 | Revise and edit opposition to motion to dismiss contempt proceedings. | 4.25 | 701.25 |
| 204 | Assc. | 6.5 | 205 | Edit 4th Circuit papers. | 6.5 | 1332.50 |
| 205 | Leg.A. | 5.5 | 44 | Check record cited for 4th Circuit pleading, review transcript for quotes, review local rules; assist in preparation for filing. | 5.5 | 242.00 |
| 206 | Assc. | 7.25 | 165 | Revise and edit response to motion to dismiss contempt proceedings; research for motion. | 7.25 | 1196.25 |
| 207 | Leg.A. | 1.5 | 98 | Proofread brief. | 1.5 | 147.00 |
| 208 | Assc. | 2.0 | 205 | Final edits on brief. | 2.0 | 410.00 |
| 209 | Assc. | 4.0 | 185 | Edit reply to motion to dismiss. | 4.0 | 740.00 |
| 210 | Assc. | 5.0 | 165 | Revise and edit response to motion to dismiss contempt proceedings. | 5.0 | 825.00 |
| 211 | Assc. | 2.5 | 205 | Finalize and file brief. | 2.5 | 512.20 |
| 212 | Assc. | 0.5 | 185 | Review final draft of reply to motion to dismiss. | 0.5 | 92.50 |
| 213 | Part. | 2.0 | 390 | Final review and edit of draft brief; telephone call to counsel. | 2.0 | 780.00 |
| 214 | Assc. | 2.0 | 205 | Review latest 4th Circuit submission. | 2.0 | 410.00 |
| 215 | Assc. | 0.25 | 165 | Conferences with counsel re contempt proceedings and possible response to filing. | 0.25 | 41.25 |
| 216 | Assc. | 0.75 | 185 | Review reply memorandum in support of motion to dismiss 4th Circuit contempt proceedings; discuss with counsel. | 0.75 | 138.75 |
| 217 | Part. | 0.5 | 390 | Preparation of 4th Circuit strategy; telephone conference with counsel. | 0.5 | 195.00 |
| Subtotal | | | | | | 22,612.45 |
| **Total (less discount)** | | | | | | 21,707.95 |

65

## H. Motion for Order to Show Cause Why Butler Should not be Held in Contempt, *Nelson Mullins Riley & Scarborough (Nelson Mullins)*

| Item | Title | Hours | Rate $/Hr | Description | Hrs. Awarded | Total |
|------|-------|-------|-----------|-------------|--------------|-------|
| 218 | | WITHDRAWN | | | | 0.00 |
| 219 | Assc. | 0.6 | 105 | Research re relief for violation of order; office conference with counsel. | 0.6 | 63.00 |
| 220 | | WITHDRAWN | | | | 0.00 |
| 221 | Assc. | 1.6 | 105 | Draft memorandum re possible violation of Fourth Circuit order. | 1.6 | 168.00 |
| 222 | | WITHDRAWN | | | | 0.00 |
| 223 | Assc. | 0.9 | 105 | Revise research memorandum. | 0.9 | 94.50 |
| 224 | Assc. | 3.6 | 105 | Review correspondence of plaintiffs' counsel in Moseley; analyze same. | 3.6 | 378.00 |
| 225 | Assc. | 5.8 | 105 | Analyze Moseley letter and Fourth Circuit order; draft memorandum to counsel. | 5.8 | 609.00 |
| 226 | Assc. | 3.7 | 105 | Draft memorandum to counsel re violation of Fourth Circuit order. | 3.7 | 388.50 |
| 227 | Part. | 1.0 | 220 | Review contempt research. | 1.0 | 220.00 |
| 228 | Part. | 0.2 | 160 | Review memorandum on contempt; communication with counsel re same. | 0.2 | 32.00 |
| 229 | Assc. | 0.2 | 105 | Office conference with counsel re research. | 0.2 | 21.00 |
| 230 | Part. | 0.5 | 160 | Review contempt motion. | 0.5 | 80.00 |
| 231 | Assc. | 1.1 | 135 | Work on motion for contempt; research re same. | 1.1 | 148.50 |
| 232 | Assc. | 2.4 | 135 | Work on motions; proposed orders for admission pro hac vice. | 2.4 | 324.00 |
| 233 | Part. | 0.5 | 220 | Review Motion for Contempt. | 0.5 | 110.00 |
| 234 | Part. | 0.2 | 220 | Review Butler letter on Contempt Motion. | 0.2 | 44.00 |
| 235 | Part. | 0.2 | 220 | Review Butler Motion for extension of contempt. | 0.2 | 44.00 |
| 236 | Part. | 0.2 | 220 | Review Butler response in Moseley. | 0.2 | 44.00 |
| 237 | Part. | 0.3 | 220 | Review Butler letter to Judge Thompson in Moseley. | 0.3 | 66.00 |
| **Total** | | | | | | 2,834.50 |

## I. Prepare for and Attend October 20 Hearing, *Nelson Mullins*

| Item | Title | Hours | Rate $/Hr | Description | Hrs. Awarded | Total |
|------|-------|-------|-----------|-------------|--------------|-------|
| 238 | Assc. | 0.8 | 175 | Assist in preparation for Fourth Circuit hearing. | 0.8 | 108.00 |
| 239 | Part. | 6.2 | 90 | Conference and meeting with counsel. | 6.2 | 1054.00 |

| Item | Title | Hours | Rate $/Hr | Description | Hrs. Awarded | Total |
|---|---|---|---|---|---|---|
| 240 | Part. | 5.1 | 140 | Attend contempt hearing; conference after hearing; work on proposed order. | 5.1 | 867.00 |
| Total | | | | | | 2,029.00 |

## J. Research Effect of Contempt Sanction, *Nelson Mullins*

| Item | Title | Hours | Rate $/Hr | Description | Hrs. Awarded | Total |
|---|---|---|---|---|---|---|
| 241 | Assc. | 6.3 | 110 | Research effects of contempt citation on contemnor. | 6.3 | 693.00 |
| 242 | Assc. | 0.3 | 105 | Research reference whether February 24, 1994, Order has been cited in later cases. | 0.3 | 31.50 |
| 243 | Assc. | 2.1 | 110 | Research re effect of contempt sanction. | 2.1 | 231.00 |
| 244 | Assc. | 2.1 | 110 | Research effect of contempt sanction | 2.1 | 231.00 |
| 245 | Assc. | 1.1 | 110 | Research effects of contempt citation; office conference with counsel re same. | 1.1 | 121.00 |
| Total | | | | | | 1,307.50 |

## K. Filing of Summary of Expenses pursuant to Fourth Circuit order, *Kirkland & Ellis*

| Item | Title | Hours | Rate $/Hr | Description | Hrs. Awarded | Total |
|---|---|---|---|---|---|---|
| 246 | Part. | 0.5 | 390 | Review of filings in 4th Circuit; leave voicemail message for counsel. | 0.5 | 195.00 |
| 247 | Assc. | 2.75 | 165 | Conferences with various counsel re billing for contempt proceeding; conferences with billing personnel regarding same. Review billing for expenses related to contempt. | 2.75 | 453.75 |
| 248 | Assc. | 3.0 | 205 | Work on fee submission; review billing records; review petition for rehearing. | 3.0 | 615.00 |
| 249 | Assc. | 2.25 | 165 | Review and compile bills for contempt proceedings. | 2.25 | 371.25 |
| 250 | Assc. | 4.0 | 205 | Work on fee submission; review hours and work descriptions. | 4.0 | 820.00 |
| 251 | Part. | 0.75 | 390 | Review and analysis of petition for rehearing and discussion with counsel. | 0.75 | 292.50 |
| 252 | Assc. | 4.75 | 165 | Prepare fee submission for contempt hearing. | 4.75 | 783.75 |
| 253 | Assc. | 8.0 | 205 | Work on fee submission. | 8.0 | 1640.00 |
| 254 | Assc. | 5.0 | 205 | Finalize fee submission and draft motion to Court. | 5.0 | 1025.00 |
| Subtotal | | | | | | 6,196.25 |
| Total (less discount) | | | | | | 5,948.40 |

L.     Respond to Motion for Evidentiary Hearing, *Kirkland & Ellis*

| Item | Title | Hours | Rate $/Hr | Description | Hrs. Awarded | Total |
|------|-------|-------|-----------|-------------|--------------|-------|
| 255 | Assc. | 2.0 | 205 | Work on response to 4th Circuit submission. | 2.0 | 410.00 |
| 256 | Assc. | 2.0 | 205 | Work on response to motion for an evidentiary hearing. | 2.0 | 410.00 |
| 257 | Assc. | 0.75 | 165 | Review contempt hearing motion; analyze possible responses. | 0.75 | 123.75 |
| 258 | Assc. | 2.0 | 165 | Review motion for an evidentiary hearing; draft response. | 2.0 | 330.00 |
| 259 | Assc. | 1.5 | 205 | Work on opposition to motion for an evidentiary hearing. | 1.5 | 307.50 |
| 260 | Assc. | 1.5 | 165 | Review cases cited in motion for an evidentiary hearing. | 1.5 | 247.50 |
| 261 | Assc. | 6.25 | 165 | Draft response to motion for an evidentiary hearing in contempt case; conferences with counsel re same. | 6.25 | 1031.25 |
| 262 | Assc. | 0.75 | 165 | Revise and edit opposition to motion for hearing. | 0.75 | 123.75 |
| 263 | Part. | 0.5 | 390 | Discussion with counsel; review of 4th Circuit filing; response. | 0.5 | 195.00 |
| 264 | Assc. | 1.0 | 165 | Revise, edit and file opposition to motion for an evidentiary hearing. | 1.0 | 165.00 |
| 265 | Assc. | 1.0 | 185 | Edit response to motion for an evidentiary hearing. | 1.0 | 185.00 |
| Subtotal | | | | | | 3,528.75 |
| **Total (less discount)** | | | | | | 3,387.60 |

M.     In Camera Submission of Fees, *Kirkland & Ellis*

The Court finds that the time relative to the production of the submission must be analyzed more closely because everyone knew at this point who was likely to be paying the piper. The Court has reviewed the material and finds that seventy-five (75) percent of the work was necessary and twenty-five (25) percent was unnecessary.

| Item | Title | Hours | Rate $/Hr | Description | Hrs. Awarded | Total |
|------|-------|-------|-----------|-------------|--------------|-------|
| 266 | Assc. | 0.75 | 165 | Read and analyze Court order; telephone calls with counsel. | 0.6 | 99.00 |
| 267 | Assc. | 0.5 | 165 | E-mail and voicemail with counsel; analyze Court order. | 0.4 | 66.00 |
| 268 | Part. | 0.5 | 390 | Review voicemail message; review and analysis of the District Court's order. | 0.4 | 156.00 |
| 269 | Leg.A. | 4.0 | 66 | Assist various attorneys, legal assistants in collecting documents, on line research in assist for brief preparation. | 3.0 | 198.00 |
| 270 | Assc. | 1.25 | 165 | E-mails with counsel; collect materials for attorneys' fees issues; voicemails to counsel. | 0.9 | 148.50 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 271 | Part. | 6.0 | 220 | Review motion for evidentiary hearing and Court Order and begin drafting supporting memorandum for fee submission. | 4.5 | 990.00 |
| 272 | Leg.A. | 4.5 | 66 | Miscellaneous request from attorney; review of bills and phone records; finding docket sheets and file duplication. | 3.4 | 224.40 |
| 273 | Part. | 5.0 | 220 | Work on fee submission memorandum. | 3.8 | 836.00 |
| 274 | Assc. | 4.75 | 165 | Conference with counsel re contempt submission to Court; review contempt billing; edit brief for contempt filing; review Court order and legal authority. | 3.6 | 594.00 |
| 275 | Assc. | 2.25 | 145 | Review previous filings and history of case.  Meetings with counsel re preparation of brief and history of case.  Edit and rewrite brief re in camera submission. | 1.7 | 246.50 |
| 276 | Part. | 5.0 | 220 | Review 4th Circuit cases; work on draft submission. | 3.8 | 836.00 |
| 277 | Assc. | 0.75 | 145 | Research re legal issues for submission. | 0.6 | 87.00 |
| 278 | Leg.A. | 3.5 | 66 | Assist in brief preparation and creation of exhibits. | 2.6 | 171.60 |
| 279 | Assc. | 5.5 | 145 | Conferences with counsel re in camera submission and legal issues.  Edit and rewrite submission re in camera proceeding.  Research re legal issues for submission. | 4.1 | 594.50 |
| 280 | Assc. | 7.75 | 165 | Prepare fee submission to Court; conferences with counsel re brief in support. | 5.8 | 957.00 |
| 281 | Leg.A. | 6.0 | 66 | Assist attorneys in brief preparation. | 4.5 | 297.00 |
| 282 | Assc. | 0.25 | 145 | Phone calls with counsel re brief in camera submission. | 0.2 | 29.00 |
| 283 | Assc. | 10.5 | 165 | Prepare fee submission to Court; conferences with counsel re same; revise and edit in camera memorandum in support of fee petition. | 7.9 | 1303.50 |
| 284 | Part. | 9.0 | 220 | Draft filing explaining responses to contempt. | 6.8 | 1496.00 |
| 285 | Assc. | 7.75 | 165 | Prepare fee submission; conferences with counsel re same; e-mails. | 5.8 | 957.00 |
| 286 | Part. | 5.0 | 220 | Go over work descriptions and fee calculations for submission. | 3.8 | 836.00 |
| 287 | Leg.A. | 3.5 | 66 | Assist attorney in brief preparation. | 2.6 | 171.60 |
| 288 | Assc. | 2.0 | 145 | Preparation for and conferences with counsel re in camera brief edits.  Edits of in camera submission and preparation of fax to client. | 1.5 | 217.50 |
| 289 | Leg.A. | 9.0 | 80 | Prepare exhibits and cite check of General Motors In Camera Submission of Fees and Memorandum in Support. | 6.8 | 544.00 |
| 290 | Assc. | 11.25 | 165 | Prepare fee submission; letter to counsel; conference with counsel at various firms; revise and edit brief. | 8.4 | 1386.00 |
| 291 | Part. | 7.0 | 220 | Telephone calls with counsel re fee submission; review drafts re same; go over all numbers included for firms. | 5.2 | 1144.00 |
| 292 | Leg.A. | 3.0 | 66 | Miscellaneous assistance in brief preparation. | 2.2 | 145.20 |
| 293 | Part. | 0.5 | 425 | Review and approval of District Court submission re attorneys fees. | 0.4 | 170.00 |
| 294 | Leg.A. | 11.25 | 80 | Cite check and assemble exhibits for General Motors Submission of Fees. | 8.4 | 672.00 |
| 295 | Part. | 4.0 | 290 | Edit and revise brief submitted to Court; conference with client. | 3.0 | 870.00 |
| 296 | Part. | 8.5 | 220 | Finalize Court submission. | 6.4 | 1408.00 |
| 297 | Leg.A. | 3.0 | 80 | Assemble exhibits for brief. | 2.2 | 176.00 |
| 298 | Assc. | 7.75 | 165 | Revise, edit and file in camera submission for Court. | 5.8 | 957.00 |
| 299 | Part. | 1.0 | 220 | Draft letter to opposing counsel. | 0.8 | 176.00 |

| Item | Title | Hours | Rate $/Hr | Description | Hrs. Awarded | Total |
|------|-------|-------|-----------|-------------|--------------|-------|
| 300 | Leg.A. | 1.0 | 66 | Pull and photocopy various briefs and pieces of correspondence; fax at request of counsel. | 0.8 | 52.80 |
| 301 | Part. | 3.5 | 290 | Review and address letters to Court and suggested responses. | 2.6 | 754.00 |
| 302 | Part. | 0.5 | 425 | Review and edit letter to Covington & Burling re inadvertent mailing of in camera submission; discussion with counsel re same. | 0.4 | 170.00 |
| 303 | Part. | 0.75 | 425 | Telephone calls to counsel; review of letter from Covington & Burling; review draft response. | 0.6 | 255.00 |
| 304 | Part. | 3.0 | 220 | Respond to letter from P. Nickles; telephone conferences with client and counsel. | 2.2 | 484.00 |
| Subtotal | | | | | | 20,876.10 |
| **Total (less discount)** | | | | | | 20,041.06 |

N.    Respond to Respondent Motion re Settlement Agreements, *Kirkland & Ellis*

The time expended here was clearly foreseeable by Butler and his attorneys and was, unfortunately, necessary.

| Item | Title | Hours | Rate $/Hr | Description | Hrs. Awarded | Total |
|------|-------|-------|-----------|-------------|--------------|-------|
| 305 | Assc. | 1.25 | 165 | Read, analyze and discuss filing with counsel; begin drafting response to same. | 1.25 | 206.25 |
| 306 | Part. | 1.25 | 290 | Conference with counsel re filing; review brief; prepare points of response. | 1.25 | 362.50 |
| 307 | Part. | 3.0 | 220 | Review latest submission; confer re response; research legal issues. | 3.0 | 660.00 |
| 308 | Assc. | 1.75 | 165 | Draft response to motion; research on legal issues related to settlements. | 1.75 | 288.75 |
| 309 | Part. | 4.0 | 220 | Evaluate law and work on response to motion to unseal. | 4.0 | 880.00 |
| 310 | Assc. | 0.5 | 165 | Revise and edit opposition to motion to compel settlement agreements. | 0.5 | 82.50 |
| 311 | Part. | 1.5 | 290 | Edit and revise draft response to filing; review another court's ruling re same; conference with counsel. | 1.5 | 435.00 |
| 312 | Part. | 4.0 | 220 | Edit response to motion. | 4.0 | 880.00 |
| 313 | Part. | 2.0 | 220 | Finalize brief in response to motion. | 2.0 | 440.00 |
| 314 | Part. | 1.0 | 220 | Telephone calls with local counsel to finalize and file brief. | 1.0 | 220.00 |
| 315 | Part. | 4.5 | 220 | Look at submission and prepare response. | 3.0 | 660.00 |
| 316 | Part. | 1.5 | 290 | Update re latest filing on settlement agreement; work on response. | 1.5 | 435.00 |
| 317 | Part. | 0.5 | 290 | Review of latest filing; e-mails re same. | 0.5 | 145.00 |
| Subtotal | | | | | | 5,695.00 |
| **Total (less discount)** | | | | | | 5,467.20 |

O.    Respond to Court's December 4 Order, *Kirkland & Ellis*

70

| Item | Title | Hours | Rate $/Hr | Description | Hrs. Awarded | Total |
|------|-------|-------|-----------|-------------|--------------|-------|
| 318 | Assc. | 4.5 | 165 | Read and analyze Court order; research legal issues; conference with counsel re legal issues. | 4.5 | 742.50 |
| 319 | Part. | 1.5 | 220 | Review Court Order; review legal authorities in relation to same. | 1.5 | 330.00 |
| 320 | Part. | 0.5 | 220 | Telephone calls re scheduling and organization of response to order. | 0.5 | 110.00 |
| 321 | Assc. | 4.0 | 165 | Research legal issues in relation to fees; conference with counsel; telephone conferences with counsel. | 4.0 | 660.00 |
| 322 | Part. | 1.5 | 220 | Telephone calls re Order and response. | 1.5 | 330.00 |
| 323 | Assc. | 3.25 | 165 | Research on legal issues; begin drafting submission re fees and responses to interrogatories. | 3.25 | 536.25 |
| 324 | Assc. | 1.25 | 165 | Draft filing re privilege of billing records. | 1.25 | 206.25 |
| 325 | Part. | 1.0 | 290 | Review of Court order and memorandum re follow-up; conference with client. | 1.0 | 290.00 |
| 326 | Part. | 1.0 | 220 | Review Court order. | 1.0 | 220.00 |
| 327 | Assc. | 5.75 | 165 | Draft, revise and edit claim of privilege for billing records and response to interrogatories; review relevant cases. | 5.75 | 948.75 |
| 328 | Part. | 0.75 | 290 | Conference with client re Court's decision; circulate order. | 0.75 | 217.50 |
| 329 | Assc. | 1.75 | 165 | Research legal issues; revise and edit Court submission; review in camera submission. | 1.75 | 288.75 |
| 330 | Assc. | 1.5 | 165 | Revise and edit privilege submission. | 1.5 | 247.50 |
| 331 | Leg.A. | 0.5 | 80 | Research for attorney. | 0.5 | 40.00 |
| 332 | Part. | 4.0 | 220 | Draft sections of submissions. | 4.0 | 880.00 |
| 333 | Assc. | 4.75 | 165 | Revise and edit motion re privilege applied to billing records; conference with counsel. | 4.75 | 783.75 |
| 334 | Assc. | 3.0 | 165 | Response to Court interrogatories; revise and edit privilege brief. | 3.0 | 495.00 |
| 335 | Part. | 3.0 | 220 | Work on interrogatories responses. | 3.0 | 660.00 |
| 336 | Assc. | 3.25 | 165 | Draft and revise privilege brief and response to interrogatories. | 3.25 | 536.25 |
| 337 | Leg.A. | 2.5 | 44 | Assisting with brief. | 2.5 | 110.00 |
| 338 | Part. | 2.0 | 290 | Review draft of submissions to Court and mark edits re same; discuss suggestions with counsel. | 2.0 | 580.00 |
| 339 | Assc. | 4.75 | 165 | Draft and edit brief in support of privilege for billing records; conference with client re same. | 4.75 | 783.75 |
| 340 | Leg.A. | 5.0 | 80 | Cite check brief and prepare exhibits for brief in support of protection for confidential and detailed billing records. | 5.0 | 400.00 |
| 341 | Part. | 1.0 | 220 | Finalize Court submissions. | 1.0 | 220.00 |
| 342 | Assc. | 3.75 | 165 | Edit and file response to interrogatories and brief supporting protection of billing records. | 3.75 | 618.75 |
| 343 | Part. | 0.5 | 425 | Review of General Motors' response to court's interrogatories and draft brief. | 0.5 | 212.50 |
| Subtotal | | | | | | 11,447.50 |
| **Total (less discount)** | | | | | | 10,989.60 |

P.      Reply/December 4 Order, *Kirkland & Ellis*

The Court has reviewed the material and finds that sixty (60) percent of the work was necessary and forty (40) percent was unnecessary.

| Item | Title | Hours | Rate $/Hr | Description | Hrs. Awarded | Total |
|------|-------|-------|-----------|-------------|--------------|-------|
| 344 | Assc. | 3.75 | 165 | Read and discuss response to GM submission on fees; begin drafting response. | 2.2 | 363.00 |
| 345 | Part. | 1.5 | 315 | Review filing re sanctions award, and outline key issues to include in response, and provide to counsel. | 0.9 | 283.50 |
| 346 | Part. | 3.0 | 220 | Review filing and outline response. | 1.8 | 396.00 |
| 347 | Assc. | 1.0 | 165 | Analyze response on fees; prepare response; voicemails to counsel. | 0.6 | 99.00 |
| 348 | Leg.A. | 5.0 | 80 | Review of response to the court's order of December 4, 1995 for various court orders, memoranda, trial transcripts and motions and gather all items for counsel. | 3.0 | 240.00 |
| 349 | Part. | 2.0 | 220 | Work on reply brief. | 1.2 | 264.00 |
| 350 | Leg.A. | 7.5 | 80 | Review of response to the court's order of December 4, 1995 for various court orders, memoranda, trial transcripts and motions. Gather all items used as references for counsel. | 4.5 | 360.00 |
| 351 | Part. | 3.0 | 220 | Work on reply brief. | 1.8 | 396.00 |
| 352 | Assc. | 7.75 | 165 | Read cases cited in opposing brief. Draft, revise and edit response to motion. | 4.6 | 759.00 |
| 353 | Assc. | 8.75 | 165 | Draft, revise and edit response to filing. | 5.2 | 858.00 |
| 354 | Assc. | 6.25 | 165 | Draft, revise and edit reply to filing for review by counsel. | 3.8 | 627.00 |
| 355 | Part. | 3.0 | 220 | Work on reply brief. | 1.8 | 396.00 |
| 356 | Part. | 2.5 | 315 | Review, revise and edit draft brief re sanctions; conference with counsel re same. | 1.5 | 472.50 |
| 357 | Part. | 7.0 | 220 | Work on reply brief. | 4.2 | 924.00 |
| 358 | Assc. | 6.75 | 165 | Draft, revise and edit reply to submission. | 4.0 | 660.00 |
| 359 | Leg.A. | 7.5 | 80 | Research of pleadings re contempt proceeding. | 4.5 | 360.00 |
| 360 | Part. | 0.75 | 315 | Conference with counsel re hearing and final reply brief. | 0.4 | 126.00 |
| 361 | Assc. | 5.75 | 165 | Final revisions and filing of contempt reply. | 3.4 | 561.00 |
| Total | | | | | | 8,145.00 |

Q.    Prepare for and Attend January 30 Hearing, *Kirkland & Ellis*

The Court has reviewed the material and finds that fifty (50) percent of the work was necessary and fifty (50) percent was unnecessary.

| Item | Title | Hours | Rate $/Hr | Description | Hrs. Awarded | Total |
|------|-------|-------|-----------|-------------|--------------|-------|
| 362 | Leg.A. | 3.0 | 80 | Index and file new pleadings and correspondence. | 1.5 | 120.00 |
| 363 | Part. | 1.0 | 220 | Prepare for oral argument. | 0.5 | 110.00 |
| 364 | Leg.A. | 4.5 | 80 | Prepare selected pleadings for review by counsel in preparation for oral argument. | 2.2 | 176.00 |
| 365 | Assc. | 0.5 | 165 | Supervise collection of materials for counsel for preparation for oral argument; arrange motor travel to Norfolk for argument. | 0.3 | 49.50 |
| 366 | Leg.A. | 7.5 | 80 | Research various pleadings to produce notebook for counsel. | 3.8 | 304.00 |
| 367 | Assc. | 2.25 | 165 | Review filings and orders in contempt matter since motion for order to show cause; prepare materials for counsel to review for contempt hearing; make arrangements for preparation. | 1.1 | 181.50 |
| 368 | Assc. | 0.75 | 165 | Review reply brief; voicemails to counsel regarding issues at upcoming hearing. | 0.4 | 66.00 |
| 369 | Part. | 0.5 | 425 | Preparation for District Court hearing; telephone calls (voicemail messages) from counsel. | 0.2 | 85.00 |
| 370 | Assc. | 2.25 | 165 | Review cases cited in reply brief; prepare memorandum to counsel re same. | 1.1 | 181.50 |
| 371 | Leg.A. | 5.0 | 80 | Research and gather cases for counsel in preparation of oral argument. | 2.5 | 200.00 |
| 372 | Part. | 1.25 | 425 | Preparation for District Court argument. | 0.6 | 255.00 |
| 373 | Assc. | 3.5 | 165 | Draft memorandum to counsel regarding issues to be argued; review pleadings filed in Fourth Circuit and District Court; conferences with counsel; read cases cited by respondent. | 1.8 | 297.00 |
| 374 | Part. | 2.0 | 425 | Discussion with counsel re evidentiary hearing issues; preparation for District Court hearing; analysis of counsel's case overview. | 1.0 | 425.00 |
| 375 | Part. | 5.0 | 220 | Prepare for oral argument. | 2.5 | 550.00 |
| 376 | Assc. | 3.0 | 165 | Collect materials for counsel's review; draft outline of oral argument; conferences with counsel. | 1.5 | 247.50 |
| 377 | Part. | 1.5 | 315 | Conference with counsel re preparation for hearing; analyze arguments and outline. | 0.8 | 252.00 |
| 378 | Part. | 4.0 | 220 | Prepare for oral argument. | 2.0 | 440.00 |
| 379 | Assc. | 9.75 | 165 | Research legal issues re fees; conferences with counsel; draft memoranda to counsel; conference with counsel regarding issue for hearing. | 4.9 | 808.50 |
| 380 | Part. | 0.5 | 425 | Review of draft Q's and A's; analysis of draft themes for District Court oral argument; preparation for oral argument. | 0.2 | 85.00 |
| 381 | Part. | 4.0 | 220 | Preparation for oral argument; draft memorandum for counsel. Discuss oral argument strategy with client; review Fourth Circuit cases. | 2.0 | 440.00 |

| 382 | Assc. | 1.25 | 165 | Prepare for contempt hearing; draft memoranda to counsel; conference with counsel regarding hearing. | 0.6 | 99.00 |
|---|---|---|---|---|---|---|
| 383 | Part. | 3.5 | 425 | Prepare for District Court hearing. | 1.8 | 765.00 |
| 384 | Assc. | 0.75 | 165 | Review and collect materials for contempt hearing. | 0.4 | 66.00 |
| 385 | Part. | 6.0 | 425 | Preparation for District Court hearing. | 3.0 | 1275.00 |
| 386 | Assc. | 1.0 | 165 | Research legal issues regarding fees; telephone conferences with counsel. | 0.5 | 82.50 |
| 387 | Leg.A. | 2.0 | 80 | Research court orders pertaining to attorney depositions for counsel. | 1.0 | 80.00 |
| 388 | Part. | 11.5 | 425 | Preparation for District Court hearing; travel to Norfolk (work in car); meeting with counsel and client re District Court hearing strategy; review and analysis of Moseley and Cockrum records. | 5.8 | 2465.00 |
| 389 | Part. | 10.0 | 220 | Travel to Norfolk by car; work during travel; prepare with counsel and client for oral argument; review cases cited by respondent. | 5.0 | 1100.00 |
| 390 | Assc. | 10.75 | 165 | Travel to Norfolk, conference en route, conferences with counsel and client; research 4th Circuit cases relating to legal issues for oral argument; prepare materials for oral argument. | 5.4 | 891.00 |
| 391 | Part. | 3.0 | 315 | Review of materials to prepare for sanctions hearing in Norfolk. | 1.5 | 472.50 |
| 392 | Part. | 2.0 | 425 | Preparation for and participation in District Court hearing in Norfolk; attendance at settlement conference with Magistrate Judge Miller. | 1.0 | 425.00 |
| 393 | Part. | 6.0 | 220 | Meet with counsel to prepare for oral argument; moot court; attend hearing and meeting with Magistrate Judge. | 3.0 | 660.00 |
| 394 | Assc. | 7.5 | 165 | Prepare for and attend contempt damages hearing; pre-argument conference with counsel; post-argument conference argument with team regarding strategy. | 3.8 | 627.00 |
| 395 | Part. | 6.0 | 315 | (Norfolk, VA) Prepare for Court hearing; read materials; conference with counsel; attend Court hearing; debrief after hearing. | 3.0 | 945.00 |
| **Total** | | | | | | 15,226.50 |

The Court finds that the total sum of reasonable attorneys' fees through January 30, 1996 for this contempt proceeding was $165,646.81 and recommends awarding the same to GM for this portion.

## Epilogue

*Pride goeth before destruction, and a haughty spirit before a fall.*[26]

The Court thus finds that Respondent's misconduct was the sole proximate cause of $1613.50 in attorneys' fees in Moseley. The Court further finds that Respondent's misconduct was a the proximate cause of an additional sum of $17,284.00 in GM attorneys' fees in Moseley and $5997.00 in Cockrum. Thus the total "harm" to GM caused by Respondent in attorneys' fees for these two matters is $24,894.50. In sum, the undersigned recommends that the total proper amount to be assessed against the Respondent Butler under the contempt decision is $24,894.50 for GM's attorneys' fees in correcting the effects of Butler's misconduct in Moseley and Cockrum, and $165,646.81 in attorneys' fees for this contempt proceeding through the period ending January 30, 1996, for a total award to Petitioner of $190,541.31.

A copy of this Report is this day being forwarded to lead counsel for the parties, with a copy to be filed in the United States District Court for the District of South Carolina and a copy to be filed with the United States Court of Appeals for the Fourth Circuit.

IT IS SO ORDERED.

/s/

_____
UNITED STATES DISTRICT JUDGE

at Norfolk, Virginia

July 26, 1996

---

[26]*Proverbs* 16:18.

75